**Brent William PETERSON, et al.,
petitioners, Respondents,**

v.

**Bryan Craig JOHNSON, Appellant.**

**No. A07–2175.**

Court of Appeals of Minnesota.

Sept. 16, 2008.

**760**

Brenda S. Denton, Duluth, MN, for respondents.

Bill L. Thompson, Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; MINGE, Judge; and JOHNSON, Judge.

## OPINION

JOHNSON, Judge.

Bryan Craig Johnson appeals from the issuance of a harassment restraining order. The district court found that Johnson harassed Brent William Peterson by observing the interior of his pickup truck when it was parked on a public street, by calling the police to report that Peterson did not have a child-safety seat in his pickup truck when transporting Johnson's five-year-old daughter, and by confronting Peterson in a verbally aggressive and threatening manner during a chance encounter. On appeal, Johnson challenges the sufficiency of the evidence supporting the district court's findings of fact and the district court's conclusions of law. We conclude that the district court erred in determining that Johnson harassed Peterson and, therefore, reverse.

## FACTS

Johnson and E.A.S. were divorced in July 2006. They have joint custody of a daughter, A.J. Pursuant to the dissolution decree, Johnson and E.A.S. have not had direct contact with each other since their divorce. In 2007, E.A.S. was living with Peterson. On September 17, 2007, Peterson and E.A.S. jointly filed a petition for a harassment restraining order (HRO). The district court conducted an evidentiary hearing on September 25 and 26, 2007.

Much of the evidence presented at the hearing concerned an incident that occurred on May 13, 2007, at the Duluth Family Visitation Center. Peterson testified that he and E.A.S. went to the visitation center in Peterson's pickup truck to pick up A.J. Peterson parked his pickup truck on the street nearby before entering the visitation center. Johnson arrived at the visitation center shortly thereafter to drop off A.J. Johnson testified that, as he walked toward the visitation center, A.J. pointed out Peterson's pickup truck, and Johnson noticed that there was no child-safety seat in the truck.

After Peterson and E.A.S. left with A.J., Johnson asked the visitation center coordinator, Philip Beadle, to call the police to report that Peterson's pickup truck did not have a child-safety seat for A.J. Beadle declined to call the police, but he told Johnson that he had a right to do so himself if he wished. Beadle testified at the hearing that he understood the law to require a booster seat for a child who is four years old or younger or 40 pounds or less. (At the time, A.J. was five years old; there is no evidence in the record concerning her weight.) Johnson called the police and reported the absence of the child-safety seat. Beadle then called Peterson to inform him of Johnson's call to the police. After learning of Johnson's call to the police, Peterson and E.A.S. called the police and confirmed that A.J. was not required by law to be in a child-safety seat.

The parties also presented evidence concerning an incident that occurred on June 3, 2007, at a Holiday gas station. Peterson testified that he stopped at the station while traveling in his pickup truck with A.J. While he was in the store, Peterson saw A.J. waving to someone through the window of the truck. As Peterson exited the store, Johnson "stepped in [Peterson's] way" and "wouldn't allow [him] to pass by." Peterson testified that Johnson was "sticking his chest out" but did not touch him. Johnson said to Peterson, "I'll tear your ass to shreds," "I know where you live," and "You'd be surprised at what kind of bad luck a guy can have." Peterson testified that the verbal exchange lasted approximately three to four minutes and ended when Peterson got into his truck and left. In contrast, Johnson testified that the confrontation never took place because he was out of town that day.

A third incident occurred on September 16, 2007. Johnson testified that while he was playing with A.J., she told him that Peterson "hits me with a belt and he spanks me." Johnson called the police to report possible child abuse.

Peterson and E.A.S. jointly filed a petition for an HRO the following day, September 17, 2007. A hearing was held a week later, and, on October 1, 2007, the district court issued an order granting the petition as to Peterson and restraining Johnson, until October 1, 2008, from harassing or having contact with Peterson. The district court denied the petition as to E.A.S. Johnson appeals.

## ISSUE

Did Peterson introduce evidence sufficient to allow the district court to find that Johnson engaged in "harassment," as that term is defined in Minn.Stat. § 609.748, subd. 1(a)(1) (2006)?

## ANALYSIS

Johnson argues that the evidence does not support the district court's findings of fact or its issuance of the HRO. A district court's authority to issue an HRO is granted by statute. Minn.Stat. § 609.748, subd. 5 (2006). Statutory interpretation is a question of law, which we review de novo. *Munger v. State,* 749 N.W.2d 335, 338 (Minn.2008). "A district court's findings of fact will not be set aside unless clearly erroneous, and due regard is given to the district court's opportunity to judge the credibility of witnesses." *Kush v. Mathison,* 683 N.W.2d 841, 843–44 (Minn.App. 2004) (citing Minn. R. Civ. P. 52.01), *review denied* (Minn. Sept. 29, 2004); *see also Roer v. Dunham,* 682 N.W.2d 179, 182 (Minn.App.2004). Ultimately, the issuance of an HRO is reviewed for abuse of discretion. *Kush,* 683 N.W.2d at 843; *Witchell v. Witchell,* 606 N.W.2d 730, 731–32 (Minn. App.2000).

A court may issue an HRO "ordering the respondent to cease or avoid the

harassment of another person or to have no contact with that person" if the court finds "that there are reasonable grounds to believe that the respondent has engaged in harassment." Minn.Stat. § 609.748, subd. 5(a). "Harassment," as the term is used in the statute, is defined as

> [1] a single incident of physical or sexual assault or [2] repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target.

Minn.Stat. § 609.748, subd. 1(a)(1). The first prong of this definition was added to the statute in a 2000 amendment. *See* 2000 Minn. Laws ch. 476, § 1, at 1435–36.

Because the statutory definition has two prongs, harassment may be proven in either of two ways. In this case, the district court relied on each prong to support its conclusion that Johnson had harassed Peterson. Under the first prong, the district court found that the June 3, 2007, confrontation at the Holiday gas station was a single incident of harassment. Under the second prong, the district court implicitly found that three incidents (Johnson's alleged search of Peterson's pickup truck, Johnson's call to the police about the absence of a child-safety seat in Peterson's pickup truck, and the confrontation at the Holiday station) were repeated incidents that constituted harassment. Johnson challenges each basis of the HRO.

## A. Single Incident of Physical Assault

■ The district court credited Peterson's testimony regarding the June 3, 2007, confrontation at the Holiday station and found that the "single incident is sufficient to constitute harassment as that term is defined under Minn.Stat. § 609.748(1)."

Johnson argues that the conduct that was alleged and proved does not constitute "harassment" because the phrase "physical . . . assault," as used in Minn.Stat. § 609.748, subd. 1(a)(1), requires physical contact.

■ Chapter 609 of the Minnesota Statutes defines "assault" as "(1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10 (2006). By its plain language, the statutory definition of assault does not require physical contact. Johnson argues, however, that the phrase "physical . . . assault" is narrower than the term "assault" because the modifier "physical" imposes an additional requirement. "A statute should be interpreted, whenever possible, to give effect to all of its provisions, and no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *State v. Larivee*, 656 N.W.2d 226, 229 (Minn.2003) (quotation omitted); *see also Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999); *Owens v. Federated Mut. Implement & Hardware Ins. Co.*, 328 N.W.2d 162, 164 (Minn.1983).

The lay definition of the word "physical" that is most applicable here is "[o]f or relating to the body as distinguished from the mind or spirit." *American Heritage Coll. Dictionary* 1050 (4th ed.2007). A secondary definition is "[i]nvolving or marked by vigorous bodily activity." *Id.* If we were to interpret "physical . . . assault" to have the same meaning as "assault," the modifier "physical" would be without any effect. In addition, to interpret section 609.748, subdivision 1(a)(1), in the manner in which Peterson urges would be inconsistent with caselaw in which this court has implied that "physical . . . assault" requires physical contact. *See Beach v.*

*Jeschke,* 649 N.W.2d 502, 502–03 (Minn. App.2002) (reversing issuance of HRO where district court order "did not find that there had been any physical contact" and where single verbal threat did not constitute "repeated incidents" under second prong).

In light of the text of the statute and the caselaw, we conclude that the concept of physical assault that is contemplated by section 609.748, subdivision 1(a)(1), is narrower in scope than the concept of assault that is defined by section 609.02, subdivision 10. Thus, to prove a physical assault under the first prong of section 609.748, subdivision 1(a)(1), a petitioner must prove the physical aspects of the statutory definition of assault in chapter 609, *i.e.,* "the intentional infliction of or attempt to inflict bodily harm upon another." Minn.Stat. § 609.02, subd. 10(2).[1]

In this case, Peterson did not allege or prove that Johnson inflicted any bodily harm during the June 3, 2007, confrontation at the Holiday gas station or that Johnson attempted to inflict bodily harm. Thus, the HRO is not properly based on the first prong of section 609.748, subdivision 1(a)(1).[2]

**B. Repeated Incidents of Intrusive or Unwanted Acts**

The district court also found that Johnson engaged in conduct that satisfied the second prong of the definition of harassment, "repeated incidents of intrusive or unwanted acts." Minn.Stat. § 609.748, subd. 1(a)(1). The district court relied on three actions by Johnson as grounds for this finding: the June 3, 2007, confrontation at the Holiday station; Johnson's observation of the interior of Peterson's pickup truck on May 13, 2007; and Johnson's report to the police on the same day concerning the absence of a child-safety seat. Johnson challenges the findings and the evidence with respect to each ground.

**1. Confrontation at Holiday Station**

■ Johnson argues that the district court's findings related to the incident at the Holiday station are erroneous. He points to his own testimony that he was out of town on the date of the confrontation. But Peterson testified that it was Johnson who confronted him. Peterson testified that Johnson referred to the issue of the child-safety seat during the encounter, and Peterson also made an in-court identification of Johnson at the evidentiary hearing. The district court did not find Johnson's testimony to be as credible as that of Peterson. Credibility determinations are the province of the trier of fact. *See Kush,* 683 N.W.2d at 843–44; *Roer,* 682 N.W.2d at 182. Accepting the district court's findings on this issue, there can be no dispute that Johnson's conduct at the Holiday station on June 3, 2007, establishes one "incident[ ] of [an] intrusive or unwanted act[ ]" that had or was intended to have "a substantial adverse effect on the safety, security, or privacy" of Peterson. Minn.Stat. § 609.748, subd. 1(a)(1).

---

1. We note that the proof needed to obtain an HRO pursuant to chapter 609 is different from the proof needed to obtain an order for protection pursuant to the Minnesota Domestic Abuse Act, which defines "domestic abuse" to include, among other things, "physical harm, bodily injury, *or assault.*" Minn. Stat. § 518B.01, subd. 2(a)(1) (2006) (emphasis added). Our interpretation of the first prong of section 609.748, subdivision 1(a)(1),

naturally has no application to section 518B.01, subdivision 2(a).

2. There is no allegation in this case that Johnson possessed or brandished a weapon during his confrontation with Peterson. Thus, we need not consider whether evidence of such conduct might satisfy the first prong of section 609.748, subdivision 1(a)(1).

### 2. Observation of Pickup Truck

■ Johnson argues that there is insufficient evidence to support the district court's finding concerning his observation of Peterson's pickup truck. Peterson conceded that he had no information to suggest that Johnson physically entered his pickup truck or even attempted to enter it. The district court did not make an explicit finding that Johnson "searched" Peterson's pickup truck but also did not make a finding about the specific action Johnson took that allowed him to observe the absence of a child-safety seat. The district court rejected Johnson's testimony that he observed the absence of a child-safety seat from "four feet away" while walking past Peterson's pickup truck. There was no evidence in the record specifically indicating why it would be impossible for Johnson to see inside Peterson's pickup truck from a distance of only four feet. In light of the evidence in the record, the district court's finding must be construed to say that Johnson was within four feet of the pickup truck but did not enter it.

■ Regardless whether Johnson was more or less than four feet from the pickup truck, the question arises whether his conduct is an "incident[ ] of [an] intrusive or unwanted act[ ]" that had, or was intended to have, "a substantial adverse effect on the safety, security, or privacy" of Peterson. Minn.Stat. § 609.748, subd. 1(a)(1). The statute requires proof of, first, "objectively unreasonable conduct or intent on the part of the harasser," *Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App.2006), *review denied* (Minn. Mar. 28, 2006), and, second, "an objectively reasonable belief on the part of the person subject to harassing conduct," *id.; see also Kush*, 683 N.W.2d at 845 (considering intent to harass from subjective standard). Neither of these requirements is satisfied in this case with respect to this incident.

As to the first requirement, neither the district court nor Peterson has cited any specific evidence tending to prove that Johnson had an intent to harass Peterson when he looked into Peterson's pickup truck. Johnson testified that he was attempting to protect his child by investigating a possible violation of law that would have a direct impact on the child's safety. This evidence, by itself, would support a conclusion that Johnson's actions were objectively reasonable. There is no specific evidence to the contrary that would tend to prove that Johnson was not motivated by a concern for the safety of his child or that his conduct was objectively unreasonable. Peterson admitted that, on the day in question, there was no child-safety seat in the pickup truck.

■ Second, the evidence does not support a conclusion that Johnson's conduct had "a substantial adverse effect on [Peterson's] safety, security, or privacy," Minn.Stat. § 609.748, subd. 1(a)(1), or that Peterson had "an objectively reasonable belief" of such an effect, *Dunham,* 708 N.W.2d at 567. Most importantly, there is no evidence that Peterson witnessed the event. Furthermore, Peterson's after-the-fact knowledge that Johnson observed the absence of a child-safety seat in his pickup truck cannot, as a matter of law, constitute "a substantial adverse effect on [his] safety, security, or privacy." Minn.Stat. § 609.748, subd. 1(a)(1). At oral argument, Peterson's counsel argued that Johnson's actions violated Peterson's privacy. But as the United States Supreme Court has noted in its Fourth Amendment jurisprudence, an individual has "no legitimate expectation of privacy ... shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown,* 460 U.S. 730, 740, 103 S.Ct. 1535, 1542, 75

L.Ed.2d 502 (1983). Rather, "[a] car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view." *United States v. Knotts*, 460 U.S. 276, 281, 103 S.Ct. 1081, 1085, 75 L.Ed.2d 55 (1983), *quoted in State v. Stevenson*, 637 N.W.2d 857, 864 (Minn.App.2002), *aff'd on other grounds*, 656 N.W.2d 235 (Minn. 2003). It is conceivable that the cumulative effect of persistent, baseless attempts to peer inside a person's vehicle might rise to the level of a substantial adverse effect on that person's safety, security, or privacy, but the evidence does not support a conclusion that the single instance of such conduct in this case had the requisite effect.

Thus, the evidence is insufficient to prove that Johnson engaged in conduct proscribed by the harassment statute when he observed that Peterson did not have a child-safety seat in his pickup truck on May 13, 2007.

### 3. Report to Police Concerning Child–Safety Seat

█ Johnson next argues that his telephone call to the police regarding the absence of a child-safety seat is not proscribed by the harassment statute. The district court found that Johnson called the police "even though he was told by a staff member of the Visitation Center that the law applied to children younger and less heavy than [Johnson's] child and [even] though he was aware of signs in the Visitation Center which also stated the law." The evidence, however, does not support this finding.

Johnson testified that his call to the police was motivated by a concern for the welfare of his daughter. Beadle, the employee of the visitation center, testified that he "didn't believe" that the law required a child-safety seat for children who are four or more years old or 40 or more pounds in weight. (In fact, state law requires a "child passenger restraint system meeting federal motor vehicle safety standards" for children who are "under the age of four," without regard to weight. Minn. Stat. § 169.685, subd. 5(a) (2006).) Contrary to the district court's findings, there is no evidence that Beadle communicated his understanding of the law to Johnson, no evidence that Johnson shared Beadle's understanding of the law at the time he placed the call, and no evidence that Johnson otherwise was aware of the law concerning child-safety seats at the time he placed the call. Beadle testified about a poster at the visitation center reflecting the four-year-old and 40–pound limits to which he testified, but there is no evidence that Johnson was aware of that particular poster when he made the call to the police. In his own testimony, Johnson acknowledged (apparently without confirming) Beadle's understanding of the law, but the record reflects that Johnson learned of Beadle's understanding of the law after the fact.

Thus, the record does not support the conclusion that Johnson called the police with the knowledge that Peterson was *not* in violation of law, which was an explicit premise of the district court's finding with respect to this incident. Telephone calls by citizens to law enforcement reporting violations of law (or even possible violations of law) are a useful means of promoting public safety, and citizens should not be deterred from making good-faith reports. Furthermore, Johnson's telephone call to the police was objectively reasonable in light of the alternative of confronting Peterson personally, which would have been more likely to result in a dispute between the two men. *Cf. Hannah v. Jensen*, 298 N.W.2d 52, 55 (Minn.1980) (interpreting Dram Shop Act so that pri-

vate citizens would not be "inhibited from summoning the police for aid in disturbances" and would not "resort to self-help measures"). If a petitioner attempts to prove that a report to the police is an instance of harassment, a district court must make sufficiently specific findings of an improper intent so as to overcome the presumptively valid reason for the report.

In addition, the record is devoid of evidence that Peterson had "an objectively reasonable belief" that he was "subject[ed] to harassing conduct." *Dunham,* 708 N.W.2d at 567. The attention of a police officer in response to a call concerning a child-safety seat does not implicate Peterson's safety or security. Likewise, it cannot be said that there was a substantial adverse effect on Peterson's privacy interests because the telephone call to the police related to the same subject as the observation of Peterson's pickup truck, which, as established above, was not an invasion of Peterson's privacy. Furthermore, the police never actually conducted an investigation of Peterson; instead, Peterson learned of the report soon afterward and then took the initiative to call police to resolve the matter. Again, although the cumulative effect of persistent, baseless calls to the police might rise to the level of a substantial adverse effect on a person's safety, security, or privacy, the evidence does not support a finding that the telephone call at issue here had the requisite effect.

Thus, the evidence is insufficient to prove that Johnson engaged in conduct proscribed by the harassment statute when he called the police on May 13, 2007, to report that Peterson did not have a child-safety seat in his pickup truck.

### 4. *Report to Police Concerning Possible Abuse*

The district court did not make any findings about Johnson's call to the police

alleging that Peterson had hit A.J. with a belt except to note that those allegations did not relate to E.A.S. Accordingly, this court may assume that the district court rejected those grounds for issuance of the HRO. *See Kroning v. Kroning,* 356 N.W.2d 757, 760 (Minn.App.1984) (assuming that district court "considered and rejected" argument because district court "did not make a specific finding" on the issue). In any event, the information available to Johnson at the time of his second call to the police presented stronger reasons for action than the information about the lack of a child-safety seat, and there is no evidence in the record that Johnson was not motivated by a genuine concern for his child's well-being. Thus, there is no evidence that Johnson's intent or actions with respect to the second police report were objectively unreasonable.

Therefore, the evidence is insufficient to prove that Johnson engaged in "repeated incidents of intrusive or unwanted acts ... that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy" of Peterson. Minn.Stat. § 609.748, subd. 1(a)(1). The evidence establishes only one such incident, the incident at the Holiday gas station on June 3, 2007. One incident of an intrusive or unwanted act is insufficient to prove harassment if there is no infliction of bodily harm or attempt to inflict bodily harm. *See Beach,* 649 N.W.2d at 503. Thus, the HRO is not properly based on the second prong of section 609.748, subdivision 1(a)(1).

### DECISION

The district court erred by finding that Peterson had proved conduct by Johnson that constitutes harassment, as that term is defined in section 609.748, subdivision 1(a)(1), and, therefore, erred by issuing the

harassment restraining order. Accordingly, the harassment restraining order is vacated.

**Reversed and vacated.**