*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-1661**

Peter Wells Fischer,
Respondent,

vs.

Gene A. Rechtzigel,
Appellant.

**Filed August 25, 2014**
**Reversed**
**Kirk, Judge**

Dakota County District Court
File No. 19AV-CV-12-1117

Kristin Kingsbury, Matthew S. Duffy, Monroe Moxness Berg P.A., Minneapolis, Minnesota (for respondent)

Gene A. Rechtzigel, Apple Valley, Minnesota (pro se appellant)

Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellant Gene A. Rechtzigel challenges the district court's order that extended a harassment restraining order (HRO) barring him from entering respondent Peter Wells Fischer's property and allowed Fischer to remove iron monuments on his property. We

conclude that the district court abused its discretion when it extended the HRO because it had expired one week earlier, and it did not have authority to allow Fischer to remove the iron monuments. Rechtzigel's remaining arguments are without merit. We reverse.

**FACTS**

This case stems from the district court's grant of an HRO against Rechtzigel, barring him from entering Fischer's property. Rechtzigel owns a 10-acre family farm in Dakota County. Fischer owns a 50-acre parcel of property directly east of the Rechtzigel farm. A 19-foot wide orphan parcel of property, which the parties refer to as "the gap," separates the parties' properties. Since 2009, the parties have litigated the ownership of the gap and the location of the boundary line separating Fischer's property and the gap in a companion case.

On April 6, 2012, the district court granted Fischer's application to register his property adjacent to the gap, and Fischer's surveyor promptly placed "No Trespassing" signs along the western boundary line of the property. Six days later, Fischer contacted the police after he learned that Rechtzigel used a chain attached to a bulldozer to unearth most of the "No Trespassing" signs. Fischer filed an ex parte affidavit and petition for a temporary HRO against Rechtzigel, alleging that Rechtzigel unlawfully entered his property and damaged the signs. On April 17, the district court denied Fischer's request for temporary relief because he did not face an immediate and present threat of harassment from Rechtzigel, but scheduled a hearing on his HRO petition.

At a hearing on July 26, Rechtzigel consented to a one-year HRO prohibiting him from harassing Fischer, contacting him, or entering the western boundary of Fischer's

2

property. The district court cautioned Rechtzigel that the HRO applied to third parties acting on his behalf.

On October 8, Erick Kardaal, Rechtzigel's attorney, notified Fischer's attorney that James Bridell, a surveyor hired by Rechtzigel, was going to enter "onto the property delineated by the [c]ourt orders" to complete a survey in preparation for upcoming litigation in the companion case. Later that month, Fischer learned that Bridell had placed seven iron monuments four feet past the western boundary of Fischer's property. Fischer promptly reported to the police that Bridell, acting as a third party for Rechtzigel, had violated the HRO.

On January 14, 2013, Fischer moved the district court to hold Rechtzigel in civil and criminal contempt and requested that the district court extend the HRO against Rechtzigel for an additional two years. On February 4, the district court issued an order indefinitely postponing a hearing on Fischer's contempt motion pending the resolution of Rechtzigel's appeal in the companion case. This court dismissed Rechtzigel's appeal as premature, but a second appeal is currently pending before this court (A14-0735).

On August 2, the district court held a hearing on Fischer's contempt motion. Rechtzigel argued that the district court could not extend the HRO because it had expired on July 26, and Fischer had consented to Bridell entering his property. Fischer argued that Rechtzigel violated the HRO because it applied to third parties such as Bridell, and Rechtzigel failed to secure the district court's permission before entering his property. Fischer pointed out that Bridell had no right as a surveyor to place iron monuments on his property, and Fischer requested that the district court allow him to remove these

3

monuments, as it was unlawful for him to do so. *See* Minn. Stat. § 505.33 (stating that any person who intentionally removes, destroys, or defaces a monument lawfully erected is guilty of a misdemeanor). Fischer also requested that the district court extend the HRO.

The district court issued its ruling from the bench, and promptly followed up with a written order. The district court denied Fischer's motion to find Rechtzigel in contempt because Bridell entered Fischer's property after Kardaal informed him that Fischer gave his consent, and the district court did not believe Kardaal acted in bad faith. The district court extended the HRO "until we get a final decision on all of this so we can just try to minimize the further animosity that's going on." The district court clarified that if the companion case settled, it would order that the HRO in this case be automatically dismissed.

The district court authorized Fischer to remove the iron monuments on his property and allowed Bridell to place temporary wooden stakes in the ground to delineate the disputed boundary line. The district court stated that the next step for the parties was to schedule an evidentiary hearing to determine the boundary line between the gap and Fischer's property in the companion case.

This appeal follows.

**D E C I S I O N**

**I.     The district court abused its discretion when it extended the HRO.**

This court uses an abuse of discretion standard when reviewing a district court's issuance of an HRO. *Witchell v. Witchell*, 606 N.W.2d 730, 731 (Minn. App. 2000).

4

Whether the district court has statutory authority to grant an HRO presents a question of statutory interpretation, which this court reviews de novo. *Peterson v. Johnson*, 755 N.W.2d 758, 761 (Minn. App. 2008). Rechtzigel argues that the district court violated his constitutional rights when it extended the HRO. Here, the HRO expired on July 26, 2013, but the district court extended it pending further court order on August 2.

An HRO is a creature of statute. *See* Minn. Stat. § 609.748, subd. 5 (2012) (stating that a district court may issue an HRO if certain requirements are met). There is no language in the statute that allows a district court to extend an expired HRO, nor does the filing of a motion toll the expiration of an HRO. We conclude that the district court abused its discretion when it extended the HRO pending further court order.

## II. The district court did not have the authority to allow Fischer to remove the iron monuments.

Because the HRO had expired and the district court did not find Rechtzigel in contempt for violating the HRO, it did not have authority in the HRO proceeding to allow Fischer to remove the iron monuments from his property. *See State by Johnson v. Sports & Health Club, Inc.*, 392 N.W.2d 329, 336 (Minn. App. 1986) (stating that "[t]he power to punish for contempt is an inherent power of constitutionally created courts in Minnesota," which "exists independent of the contempt statutes"), *review denied* (Minn. Sept. 24, 1986); *see also In re Welfare of R.L.W.*, 309 Minn. 489, 491 n.1, 245 N.W.2d 204, 205 n.1 (1976) (noting that the purpose of civil contempt "is to coerce performance by the contemnor so as to effectuate a remedy given to a private party, whereas criminal contempt's purpose is to vindicate the authority of the court").

**III. Rechtzigel's remaining arguments are without merit.**

Finally, Rechtzigel raises a number of arguments in his reply brief that he did not make before the district court in this case, including the following: the removal of the iron monuments constitutes a taking; denial of due process; equal protection; fraud on the court; violation of his constitutional rights under the Fifth and Fourteenth Amendment; doctrine of practical application; res judicata; and collateral estoppel. Rechtzigel waived these arguments as they were not addressed in Fischer's brief. *See* Minn. R. Civ. App. P. 128.03, subd. 4 ("The reply brief must be confined to new matter raised in the brief of the respondent.").

**Reversed.**