*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1926**

Tyler VanCamp, et al., petitioners,
Respondents,

vs.

Tracey VanCamp,
Appellant.

**Filed June 1, 2015
Affirmed
Hooten, Judge**

Pennington County District Court
File No. 57-CV-14-689

Michael M. Mattocks, Charlson & Jorgenson, P.A., Thief River Falls, Minnesota (for respondents)

Stephen D. Larson, Odland, Fitzgerald, Reynolds & Harbott, P.L.L.P., Crookston, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Stauber, Judge; and Crippen, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

On appeal from the district court's issuance of a harassment restraining order (HRO) to one of the respondents and her two minor children, appellant argues that the

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

HRO should be reversed because the record does not support the district court's finding of repeated incidents of harassment, and therefore the district court abused its discretion by issuing the HRO. We affirm.

**FACTS**

Appellant Tracey Lynn VanCamp and respondent Tyler VanCamp divorced in 2006. They are the parents of two minor children and share joint legal and physical custody of their children. A 2011 post-dissolution order imposed a contact restriction between appellant and Tyler, which provided: "Neither party shall have any contact with the other party, except via email or texting, and only when the subject matter is associated with the minor children." Respondent Deidre VanCamp is currently married to Tyler, and Deidre has two minor children from a prior marriage, E.W. and A.W., who live with Deidre and Tyler.

In September 2014, Deidre and Tyler filed an affidavit and petition for an HRO against appellant on behalf of themselves, E.W., and A.W. They alleged several incidents of non-physical harassment by appellant from 2011 to 2014. An evidentiary hearing was held on the petition. Deidre, Tyler, and appellant testified at the hearing. After receiving this testimony, the district court granted an HRO in favor of Deidre, E.W., and A.W. for a period of one year. The district court did not grant the HRO in favor of Tyler. The district court found that there were reasonable grounds to believe that appellant had engaged in harassment by: (1) following Deidre, E.W., and A.W., who were with one of Tyler and appellant's children during Tyler's parenting time, at a county

2

fair yelling, "Mommy loves you"; (2) continually calling Deidre's home; and (3) taking pictures of E.W. at school without permission. This appeal followed.

## DECISION

Appellant challenges the district court's findings of fact as to each of the three incidents cited in the HRO, as well as the district court's determination that appellant harassed Deidre and her children. A district court may grant an HRO if "there are reasonable grounds to believe that the [actor] has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3) (2014). Harassment includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." *Id.*, subd. 1(a)(1) (2014). To sustain an HRO petition, the petitioner must prove: (1) "objectively unreasonable conduct or intent on the part of the harasser"; and (2) "an objectively reasonable belief on the part of the [harassed] person" of a substantial adverse effect on the person's safety, security, or privacy. *Peterson v. Johnson*, 755 N.W.2d 758, 764 (Minn. App. 2008) (quotations omitted). We review the district court's grant of an HRO for an abuse of discretion. *Kush v. Mathison*, 683 N.W.2d 841, 843 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004). We defer to the district court's credibility determinations and will not set aside the district court's findings of fact unless they are clearly erroneous. *Id.* at 843–44.

In considering the three incidents of harassment found by the district court, we take into account the broader context in which the alleged harassment took place. *See id.* at 844 ("In addition to its findings regarding the two specific incidents, the district court

3

found that appellant's other harassing conduct gave context to an ongoing situation."); *Witchell v. Witchell*, 606 N.W.2d 730, 732 (Minn. App. 2000) (reading "in context" father's allegedly harassing statements toward mother in a visitation notebook). Specifically, we recognize that a contact restriction existed between Tyler and appellant when the alleged harassment took place, and Tyler, Deidre, and appellant testified at length about the ongoing conflict in their relationships in addition to the specific incidents that the district court found to be harassment.

### County Fair Incident

The district court found that appellant harassed Deidre and her two children by following them at a county fair yelling, "Mommy loves you." Deidre testified that during Tyler's parenting time, she and a friend went without Tyler to a county fair with six children, which included Deidre's children, one of Tyler and appellant's joint children, and Deidre's friend's children. Appellant tried to approach Deidre and the group. Deidre and the group "tried to maneuver away," but appellant "chased" them down the fairway, repeatedly yelling, "Mommy loves you." Deidre described appellant's tone of voice as "threatening." She stated that her children were "scared of [appellant]." She explained: "It's her tone of voice. It's her actions. She throws her hands in the air." Deidre testified that her children wonder: "[W]hy is this woman chasing us? Why is she following us around? Why does she stare at us?" Appellant did not testify regarding this incident.

On appeal, appellant argues that her conduct at the county fair was reasonable, noting that this incident took place in public and that Deidre and her children were merely "incidental recipient[s]" of appellant's words and conduct. Respondents argue

that they "did not bring their petition in response to *reasonable* contact in public," such as appellant saying "hi" upon a chance meeting. Instead, they brought their petition because appellant's conduct "exceeded her right to reasonable contact" with her children and interfered with Deidre and her children's "ability to carry on their lives."

Considering this incident "in context," *Witchell*, 606 N.W.2d at 732, the district court did not clearly err in finding that appellant's conduct at the fair was "objectively unreasonable," *Peterson*, 755 N.W.2d at 764 (quotation omitted). Deidre and the group tried to "maneuver" away from appellant, which clearly indicated that they did not want to interact with her. Despite this, appellant "chased [them] down" and yelled after them in a threatening tone of voice. A reasonable person in appellant's shoes would know that her conduct was intrusive and unwanted, given the high level of conflict between the two families.

Moreover, the district court did not clearly err in finding that Deidre and her children had an "objectively reasonable belief," *id.* (quotation omitted), of a substantial adverse effect on their privacy as a result of appellant's conduct at the fair. Reasonable people in their position would feel that their privacy had been invaded if appellant continued to follow them and yell at them at a public event, even after they indicated that they did not want to interact with her. The district court did not clearly err in finding that appellant's conduct at the county fair establishes one "incident[] of intrusive or unwanted acts, words, or gestures that [had] a substantial adverse effect on the . . . privacy" of Deidre, E.W., and A.W. Minn. Stat. § 609.748, subd. 1(a)(1).

*Harassing Phone Calls*

The district court found that appellant harassed Deidre and her children by continually calling Deidre's home. Deidre testified that, on a number of occasions, appellant has called her home phone excessively when Tyler has parenting time with the joint children. Deidre also stated that appellant has "been told several times, by the police, not to call." She stated that one of her children "has had to take the phone off the hook" because they do not have caller ID, and therefore she and her children answer every call that comes in. The district court pointed out that appellant had the right to call the joint children when Tyler had parenting time, but Deidre countered that she and her children end up being subjected to appellant's repeated calling. Deidre also testified that she and her children "don't want to be contacted" by appellant and that appellant does not respect their privacy. Appellant did not testify regarding these telephone calls.

On appeal, appellant does not deny the frequency of her repeated telephone calls to Deidre's home. But, she argues that she has a right to have "reasonable phone access" with the joint children when Tyler has parenting time and claims that her telephone calls were not "directed" at Deidre and her children.

Based upon this record, we conclude that the district court did not clearly err by concluding that appellant's conduct of making continual telephone calls establishes one "incident[] of intrusive or unwanted acts, words, or gestures that [had] a substantial adverse effect on the . . . privacy" of Deidre, E.W., and A.W. Minn. Stat. § 609.748, subd. 1(a)(1). A reasonable person in appellant's position would know that her conduct went beyond reasonable telephone access with the joint children, and her continual

6

telephone calls were intrusive and unwanted. The district court did not err by concluding that such conduct was objectively unreasonable and had a substantial adverse effect on the privacy of Deidre, E.W., and A.W.

### *School Picture Incident*

The district court found that appellant harassed E.W. by taking pictures of him at school without permission. Respondents stated in their affidavit and petition, and Deidre testified, that appellant entered E.W.'s school and took pictures of E.W. in the hallway without the permission of E.W. or Deidre. Respondents stated that E.W. "was terrified" and reported the incident to the school principal, who confronted appellant. Appellant testified that she took pictures of students in the hallway, but claimed that she intended to take pictures only of her friend's son and her boyfriend's nephew, not E.W. She testified that she took the pictures simply because she "love[s] pictures."

By finding that this incident constituted harassment, the district court clearly rejected appellant's testimony and credited respondents' version of this incident. We defer to the district court's credibility determinations. *Peterson*, 755 N.W.2d at 763. Accordingly, we reject appellant's argument that E.W. was only "incidentally included in pictures that [a]ppellant took and was not the intended target of the picture taking."

The district court did not clearly err in finding that appellant's conduct of taking pictures of E.W. without permission establishes one incident of an "intrusive or unwanted act[]" that had "a substantial adverse effect" on the privacy of E.W. Minn. Stat. § 609.748, subd. 1(a)(1). Given the high level of conflict between the two families, a reasonable person in appellant's shoes would know that her conduct of taking pictures of

Deidre's minor child at his school without permission was intrusive and unwanted, especially considering that there is no evidence that appellant explained to the child any reason for taking the pictures. The district court did not err by concluding that such conduct was objectively unreasonable and had a substantial adverse effect on E.W.'s privacy.

Based upon this record, we conclude that the district court did not abuse its discretion by issuing the HRO in favor of Deidre, E.W., and A.W. because "there are reasonable grounds to believe that [appellant] has engaged in harassment." *Id.*, subd. 5(b)(3).

**Affirmed.**