*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1421
A23-1422**

Nicole Lynn Albertson and On Behalf of Minor Children,
Respondent,

vs.

Bruce Wayne Albertson,
Appellant (A23-1421),

Nicole Lynn Albertson and On Behalf of Minor Children,
Respondent,

vs.

Cynthia Albertson,
Appellant (A23-1422).

**Filed May 20, 2024
Affirmed
Florey, Judge**[*]

Wilkin County District Court
File No. 84-CV-23-307

Jessica Faunce, Legal Services of Northwest Minnesota, Alexandria, Minnesota (for respondent)

Anthony M. Bussa, CJB Law, LLC, Fergus Falls, Minnesota (for appellants)

        Considered and decided by Worke, Presiding Judge; Schmidt, Judge; and Florey, Judge.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FLOREY**, Judge

In these consolidated appeals from the district court's grant of harassment restraining orders (HROs), appellants argue that the record does not support the inclusion of respondent's minor children as persons protected by those HROs. We affirm.

## FACTS

On August 2, 2023, respondent Nicole Albertson petitioned for HROs against appellants Bruce and Cynthia Albertson.[1] Nicole included a request for relief on behalf of two of her minor children, four-year-old C.A. and seven-year-old A.A. Bruce and Cynthia are the children's grandparents, and Nicole's in-laws.

Nicole's petitions alleged that, on July 29, 2023, Cynthia and Bruce showed up at Nicole's home uninvited and tried to take her children. The district court granted separate ex parte HROs against Cynthia and Bruce, on behalf of both Nicole and the minor children. Cynthia and Bruce requested a hearing.

At the consolidated evidentiary hearing, Nicole testified that, on July 29, Nicole's husband was arrested at their home following a birthday party. Following his arrest, Cynthia texted Nicole a series of messages, blaming Nicole for the arrest. A short time later, Bruce and Cynthia entered the home without calling or knocking at the door. Nicole tried to block them from coming up the stairs to the second floor, where the children were, but Cynthia physically pushed past Nicole. Bruce then pinned Nicole to the wall, and

---

[1] For clarity, we refer to the parties by their first names.

Cynthia grabbed C.A. and took him downstairs. Nicole testified that the children were "screaming and crying" and seemed scared when Bruce pinned her, and that C.A. yelled at Cynthia to leave him alone.

Nicole followed Cynthia back downstairs and, after a physical altercation, Nicole took C.A. back from Cynthia. While Nicole was trying to call 911, Bruce grabbed Nicole's phone from her and hit C.A. in the nose. During that altercation, Cynthia took A.A. to her vehicle, a red Jeep. Nicole got her phone back from Bruce and called 911. When the police later arrived, they did not allow Bruce and Cynthia to take the children. Nicole testified that A.A. "gets scared when he sees a red Jeep" and that C.A. "says that he doesn't want to talk to [Bruce and Cynthia]."

Cynthia and Bruce also testified. Cynthia testified that she returned to the house because she thought that there were no adults with the children. Cynthia explained that, as she entered the house, Nicole cursed at her and said, "You're not taking my 'expletive' kids." Cynthia then went past Nicole upstairs and picked up C.A., who was emotional. When Cynthia carried C.A. downstairs, Nicole "tackled" her and took C.A. Cynthia testified that Nicole began "slinging around" her phone, and Cynthia then took A.A. to her Jeep. Bruce testified that when he came upstairs, Cynthia was holding C.A. and Nicole was upset. He explained he "did a bearhug behind [Nicole]." Bruce also testified that he grabbed Nicole's phone from her while she was swinging it, and then gave the phone back after Nicole said she was calling 911.

Following the hearing, the district court issued HROs against both Bruce and Cynthia, on behalf of Nicole and the minor children. The district court found that there

3

were reasonable grounds to believe that Cynthia and Bruce had "engaged in harassment which has or is intended to have a substantial adverse effect on safety, security, or privacy." The district court found that Cynthia (1) "physically . . . assaulted" Nicole by "push[ing] [Nicole] in an attempt to take [Nicole's] child"; (2) sent harassing text messages about Nicole's relationship with Cynthia's son; and (3) frightened Nicole by attempting to "physically remove [Nicole's] children from her care." The district court also found that Bruce (1) "physically . . . assaulted" Nicole when he "put his arms around [Nicole] and restrained her in the presence of at least one child"; (2) "physically . . . assaulted" Nicole by grabbing her phone from her; and (3) "assisted with an attempt to take [Nicole's] children from her care." The HROs prohibited Bruce and Cynthia from contacting Nicole and prohibited Bruce and Cynthia from contacting the children, except that Bruce and Cynthia may contact the children while they are in their father's care. The HROs also prohibited Bruce and Cynthia from being within 500 feet of Nicole's home and from being within 300 feet of the children's care provider.

Bruce and Cynthia each appealed, and we consolidated their appeals.

## DECISION

On appeal, appellants challenge the sufficiency of the evidence supporting the district court's grant of HROs against them. At oral argument in this court, appellants conceded that sufficient evidence supported the grant of HROs on behalf of Nicole.[2] As a result, we consider only whether the record supports HROs on behalf of the minor children.

---

[2] This court notes, and appreciates, appellants' candor on this point.

By statute, harassment includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." Minn. Stat. § 609.748, subd. 1(a)(1) (2022). A district court may grant an HRO if there are "reasonable grounds" to believe that the respondent engaged in harassment. *Id.*, subd. 5(b)(3) (2022). We review a district court's decision whether to issue an HRO for an abuse of discretion. *Peterson v. Johnson*, 755 N.W.2d 758, 761 (Minn. App. 2008). "A district court's findings of fact will not be set aside unless clearly erroneous, and due regard is given to the district court's opportunity to judge the credibility of witnesses." *Id.*; *see also In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-23 (Minn. 2021) (discussing clear-error review and noting that it is "a review of the record to confirm that evidence exists to support the decision"). "[T]his court will reverse the issuance of a restraining order if it is not supported by sufficient evidence." *Kush v. Mathison*, 683 N.W.2d 841, 844 (Minn. App. 2004), *rev. denied* (Minn. Sept. 29, 2004). But "[t]he determination of what constitutes an adequate factual basis for a harassment order is left to the discretion of the district courts." *Id.* at 846.

Appellants contend that the district court's findings are unsupported by the record. They assert that they did not engage in any conduct that "substantially, and adversely, affected the safety, security, or privacy of [the minor children]." We are unpersuaded.

The district court found that Cynthia and Bruce attempted to physically remove both children from Nicole's care and physically assaulted Nicole. And the district court found that Cynthia pushed Nicole to take her child and that Bruce restrained Nicole in the presence of at least one of the children. These findings are supported by the record,

5

including Nicole's testimony that the children were "screaming and crying" when Bruce pinned her, that Cynthia grabbed C.A., that C.A. yelled at Cynthia when she took him downstairs, and that Cynthia took A.A. to her vehicle.

Appellants' contention that the district court's findings are unsupported by the record relies on their testimony. But the district court heard testimony from Nicole, Bruce, and Cynthia and it determined Nicole's testimony to be credible. *See Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009) (considering implicit credibility findings on appeal from district court's grant of an order for protection). We do not second-guess the district court's credibility determinations or reweigh the evidence when reviewing a district court's factual findings. *Peterson*, 755 N.W.2d at 761; *see also Kenney*, 963 N.W.2d at 221-22 ("[C]lear-error review does not permit an appellate court to weigh the evidence as if trying the matter *de novo*." (quotation omitted)). Moreover, Cynthia and Bruce concede that there is sufficient evidence that they harassed Nicole, and this court has recognized the effect that harassing conduct may have on child witnesses. *See Kush*, 683 N.W.2d at 845 ("In many cases, as here, children are present and may either witness the behavior first-hand or develop a sense of fear given the substantial effects the harassing conduct has on the adults around them.").

In sum, the record supports the district court's findings that Cynthia and Bruce engaged in conduct that substantially, adversely affected the minor children's safety, security, and privacy. The district court therefore did not abuse its discretion when including the minor children in the HROs against Bruce and Cynthia.

**Affirmed.**

6