*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1494**

Jamie Alysha Messerli,
Respondent,

vs.

Jonathan Warren Castillo,
Appellant.

**Filed June 3, 2024**
**Affirmed**
**Frisch, Judge**

Hennepin County District Court
File No. 27-CV-23-10775

Jason C. Brown, Barna, Guzy & Steffen, Ltd., Coon Rapids, Minnesota (for respondent)

Jacob T. Erickson, Smith, Paulson, O'Donnell & Erickson, PLC, Monticello, Minnesota
(for appellant)

Considered and decided by Bratvold, Presiding Judge; Segal, Chief Judge; and
Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

Appellant argues that the district court abused its discretion in granting respondent's
petition for a harassment restraining order (HRO), maintaining that the record does not
support a determination of harassment. Because the district court's order is supported by
the record, we affirm.

## FACTS

On April 3, 2023, respondent-mother Jamie Alysha Messerli petitioned the Carver County District Court for an HRO against appellant-father Jonathan Warren Castillo on behalf of herself and the parties' two daughters. Messerli alleged that, about once a week since the beginning of January 2023, Castillo would come to the children's school when she was there to pick up the children after school and would, among other things, follow her into the school, berate her in front of parents and school staff, and record her without her permission. The Carver County District Court granted Messerli a temporary ex parte HRO, and Castillo timely requested a hearing. The case was then transferred to Hennepin County District Court to be heard by the same referee presiding over the parties' ongoing custody dispute.

At the hearing, Messerli testified that in January 2022, following a custody trial, the family court granted her sole physical and sole legal custody of the parties' children. The order also granted Castillo parenting time, including picking up the children on Tuesdays at the school. But in September 2022, Messerli notified Castillo that she had made the unilateral decision to stop his parenting time. Castillo sent a message to Messerli telling her that she was committing a felony by withholding the children in violation of the custody order, and he regularly called the police to notify them that Messerli was withholding the children. But Castillo did not attempt to exercise his parenting time between September 2022 and January 2023.

In January 2023, Castillo began appearing at the children's school every Tuesday after school. During his first appearance at the school, Castillo sat inside his car outside of

the school, but when Messerli entered the school to pick up the children, Castillo followed her inside. The school principal then assisted Messerli in getting the children into her car so they could leave. Castillo continued this behavior every Tuesday for the next few months, following Messerli into the school during pickup, filming her taking the children, and following them to Messerli's car. In each instance, a school representative was present to mediate and ensure safety. Over time, Castillo's behavior escalated. Castillo would not speak directly to Messerli and would instead tell the staff that Messerli was "abusive," and "a terrible mother," and he would tell other parents that Messerli was a "kidnapper."

In response to this behavior, Messerli and school staff developed a safety plan that included Messerli picking up the children before their normal scheduled pickup time and from a different location at the school to attempt to prevent any interaction with Castillo. But Castillo circumvented this safety plan by changing his own arrival time and location so that he could continue to encounter Messerli and the children at the school.

Castillo further escalated his conduct by following Messerli to her car, pressing his phone against Messerli's car window to film her, and mocking her. On at least one occasion, Castillo clapped his hands while following Messerli, simultaneously saying, "great parenting, great parenting." On another occasion, Castillo followed Messerli to her car, screamed at Messerli that she was a "deadbeat mom" and was "abusing the kids," and threatened to call the police. Another parent intervened to enable Messerli to get in the car and leave. Messerli testified that as a result of Castillo's actions, she had lost weight and sleep from the fear she felt for herself and her children.

3

Castillo also testified at the hearing. He stated that although he exercised his parenting time prior to the end of September or beginning of October 2022, he did not visit with the children thereafter. Castillo testified that, after he stopped exercising parenting time, he still went to the children's school Tuesdays during his court-ordered pickup time. Castillo admitted to approaching Messerli's car at the school, but he denied following or yelling at Messerli. Castillo admitted to calling Messerli an abusive parent in front of the children and a kidnapper in front of other parents at the school. Castillo acknowledged to the referee that his decision to accuse Messerli of crimes in front of the children and people at the school was not a "child-focused decision."

The referee credited Messerli's testimony and discredited Castillo's testimony, specifically finding that Castillo did not appear at the children's school to exercise parenting time but instead appeared at the school to harass and embarrass Messerli. The referee specifically noted that a recording of one of the encounters at the school corroborated Messerli's account. The referee recommended that the district court award the HRO, concluding that Castillo's conduct constituted harassment. The district court accepted the referee's recommendation and issued a nearly two-year HRO that prohibited Castillo from contacting Messerli and from coming within one-half mile of Messerli's home or the children's school. The district court included an exception to the no-contact provision to allow the parties to participate in any alternative-dispute resolution ordered in the family court proceeding. Castillo appeals.

4

**DECISION**

A district court may grant an HRO request if it finds that the petitioner was a victim of "harassment." Minn. Stat. § 609.748, subd. 5 (2022). "Harassment," as relevant here, is defined as "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." Minn. Stat. § 609.748, subd. 1(a)(1) (2022). To award an HRO, the district court must find both an "objectively unreasonable conduct or intent on the part of the harasser" and "objectively reasonable belief on the part of the person subject to harassing conduct." *Peterson v. Johnson*, 755 N.W.2d 758, 764 (Minn. App. 2008) (quotation omitted). We review the district court's harassment determination for an abuse of discretion, and we will not set aside its findings of fact unless those findings are clearly erroneous. *Kush v. Mathison*, 683 N.W.2d 841, 843 (Minn. App. 2004), *rev. denied* (Minn. Sept. 29, 2004). Castillo contends that the district court abused its discretion because the record does not establish that he acted with a harassing intent or that Messerli had an objectively reasonable belief that she was being harassed. We disagree.

The referee found that Castillo went to the school to intimidate and harass Messerli by "antagonizing [her], getting her flustered, pushing her buttons and embarrassing her in front of her community." Castillo asks us to reject this finding and to instead conclude that his intent was to exercise his parenting time. We decline to do so for two reasons. First, the referee expressly discredited Castillo's testimony to that effect, and "credibility determinations are the province of the trier of fact." *Peterson*, 755 N.W.2d at 763. Second, the district court's determination that Castillo's conduct was inconsistent with an attempted

5

exercise of parenting time is supported by the record. Although we do not condone or excuse Messerli's unilateral decision to deny Castillo his court-ordered parenting time, we note that Castillo did not seek the family court's assistance in enforcing the parenting-time order and instead chose to engage in disruptive, harassing conduct and speech designed to intimidate, harass, and embarrass Messerli. *See Berg v. Wiley*, 264 N.W.2d 145, 151 (Minn. 1978) ("In our modern society, with the availability of prompt and sufficient legal remedies as described, there is no place and no need for self-help . . . ."). Castillo followed Messerli into the school, walked behind her, clapped his hands and mocked her, and pursued her to her car while filming her. He called Messerli a "kidnapper" and an "abusive mother" in front of the children, school staff, and other parents. This conduct and speech are not, as Castillo contends, "objectively reasonable."[1] And although Castillo rightly complains about Messerli's acts in violation of the parenting-time order, our review on appeal is limited to whether Castillo's behavior was objectively unreasonable. His statements and actions, which are unrelated to requests or efforts to exercise his parenting time, support the referee's finding that Castillo acted with a harassing intent.

The record also supports the district court's determination that Messerli held an objectively reasonable belief that Castillo's conduct was harassing. Castillo's conduct was

---

[1] Castillo also argues that his statements to Messerli cannot be harassment because he is immune from liability under Minn. Stat. § 554.03 (2022). That statute precludes liability for "[l]awful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action." Minn. Stat. § 554.03. The referee found that Castillo's conduct was intended to harass, embarrass, and intimidate Messerli. There is no evidence in the record that Castillo engaged in this harassing conduct so as to procure favorable government action.

so severe that the school staff would mediate during pickup, the school developed a safety plan, and on at least one occasion, another parent intervened on behalf of Messerli. Castillo repeatedly thwarted that safety plan by changing his arrival time and location in a manner designed to guarantee that he would interact with Messerli. Castillo's repeated intrusions caused Messerli to lose weight and sleep. In light of this credited record evidence, the district court did not abuse its discretion by finding that Messerli had an objectively reasonable belief that she was being harassed.

**Affirmed.**