*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1727**

Karla Lynn Mitchell,
Respondent,

vs.

Warren Mark Linn Black,
Appellant.

**Filed November 24, 2025
Affirmed
Ross, Judge**

Lyon County District Court
File No. 42-CV-24-207

Karla Lynn Mitchell, Tracy, Minnesota (self-represented respondent)

Warren Black, Marshall, Minnesota (self-represented appellant)

Considered and decided by Bond, Presiding Judge; Ross, Judge; and Larkin, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

Appellant Warren Black demanded an evidentiary hearing to challenge a petition for a harassment restraining order (HRO) filed by respondent Karla Mitchell. The district court granted the HRO, reasoning that Black had violated active HROs by harassing Mitchell at least three times. Black asks us to reverse the district court's decision granting the HRO request. We affirm because the record supports the district court's finding that Black engaged in following, monitoring, or pursuing Mitchell in violation of existing

HROs, Black's due-process rights were vindicated, and the district court acted within its discretion in fashioning the HRO.

**FACTS**

Karla Mitchell petitioned the district court in February 2024 to grant an HRO against her former husband, Warren Black, after their 2023 divorce. This was not the first HRO proceeding involving the parties. During their acrimonious divorce proceedings, the district court issued an HRO against Black in March 2022, prohibiting him from contacting Mitchell or entering within 500 feet of her home in Tracy. That HRO was scheduled to expire on March 30, 2024, and Mitchell's February petition sought a new HRO because Black allegedly violated it. The district court issued an HRO *ex parte*, renewing the prior HRO's terms and adding a restriction prohibiting Black from entering within 500 feet of Mitchell's workplace in downtown Marshall. Black requested an evidentiary hearing to contest the *ex parte* order.

Mitchell testified at the hearing, asserting that Black violated the 2022 HRO on multiple occasions from March 2022 to the date of the hearing. She said that she had encountered Black in local grocery stores since 2022, where Black would "smile and make eye contact with her." She testified also that Black approached her at a public library and at a town festival. Mitchell alleged too that Black disabled her vehicle by tampering with its spark plugs and that he positioned himself on a hilltop to observe her home.

Black countered Mitchell's testimony with his own. He said that the grocery-store encounters involved Mitchell's approaching him each time. Black testified that he had arrived at the Tracy festival before Mitchell, maintained a distance of "at least eighty feet"

2

from her, and then left the event. He said that the hilltop Mitchell referred to was outside the restricted range from her home and that he had been there leaving gifts for the parties' daughter. Black opined that Mitchell's car likely had problems because of extreme weather and denied having the mechanical knowledge to affect its performance. And he said that he had been at the library for legitimate business purposes.

Mitchell also said that Black appeared at a church event where she was serving dinner to congregants. A church administrator ushered Mitchell into a room until Black left. That administrator testified at the hearing that Black was not a member of the church but frequently asked about Mitchell's involvement at church events. According to the administrator, she stations two members at the church entrance every Sunday to prevent Black from entering. Black testified that he had been invited to the dinner by the pastor's family and had inquired about Mitchell's attendance only to avoid violating the HRO.

Mitchell testified that Black also violated the *ex parte* HRO in May 2024 shortly before the hearing. She spotted Black in his van less than a block from her workplace. She said that she drove into a parking lot to prevent him from following her. Black, who lives itinerantly in his van and runs a mobile veterinary service, contended that he was completing a routine errand more than 500 feet from Mitchell's workplace. He testified that police had responded to the library, festival, church, and workplace incidents but had not concluded that he violated the HROs.

Mitchell testified that Black's conduct caused her fear and stress. She characterized his behavior as "relentless" and intended to frighten, intimidate, and harass her. Mitchell's fellow church congregant said that she had noticed changes in Mitchell's behavior,

3

including installing a doorbell camera, informing friends of her whereabouts, and scanning her public surroundings.

The district court granted Mitchell's HRO petition, checking boxes and filling in blanks on a form order. It found that Black had engaged in harassment at least thrice by following Mitchell to "various locations" in 2022, interacting with her at the festival in Tracy, and monitoring her at her workplace in 2024. The district court found too that Black's conduct adversely affected Mitchell's safety, security, or privacy. It ordered the restrictions to remain in effect until 2034. It later denied Black's motion to amend the order.

Black appeals.

## DECISION

Black challenges the HRO, raising four arguments. He argues first that the district court applied incorrect definitions of "harassment" and "violation." He argues second that the record does not support a ten-year HRO. He argues third that the district court violated his due-process rights. And he argues fourth that the HRO imposes an undue burden on his right to travel and engage in commerce. The arguments do not prevail under our deferential review standard.

We are unpersuaded by Black's contention that the district court applied erroneous definitions of the harassment statute's terms. We review questions of statutory interpretation *de novo*. *Peterson v. Johnson*, 755 N.W.2d 758, 761 (Minn. App. 2008). Black uncompellingly maintains that acts of following, monitoring, or pursuing Mitchell could not constitute harassment under the statute. The district court may issue an HRO if there are reasonable grounds to believe the respondent has engaged in harassment. Minn.

4

Stat. § 609.748, subd. 5(b)(3) (2024). And harassment includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy" of the victim. *Id.*, subd. 1(a)(1) (2024). Black contends that the district court misconstrued "harassment" under the statute by finding that his alleged acts of following, monitoring, or pursuing Mitchell qualified. Black does not explain why unwanted following, monitoring, or pursuing a person cannot constitute "unwanted acts" prohibited by the statute. The district court did not misapply the definition of harassment.

We are similarly unpersuaded by Black's contention that the district court erroneously defined an HRO "violation." Black argues that a violation occurs when the district court adopts a factual determination by law enforcement that the subject of an HRO has breached its terms. Black does not support with any caselaw or statute his novel and facially suspect theory that the district court must await some sort of police fact finding before it can engage in its own. We accept the longstanding maxim that the district court enjoys broad discretion to find facts and determine witness credibility at evidentiary hearings, Minn. R. Civ. P. 52.01, and we reject Black's unsupported theory as unmerited.

We hold also that the record supports the district court's finding that Black engaged in repeated acts of harassment. We review fact findings only for clear error, *Kush v. Mathison*, 683 N.W.2d 841, 843–44 (Minn. App. 2004), *rev. denied* (Minn. Sept. 29, 2004), and we are satisfied that the evidence was sufficient for the district court to find that Black violated the prior HROs on the occasions it referenced.

5

Black maintains that the evidence could not support a reasonable belief that he harassed Mitchell by monitoring her outside her workplace, by following her to various locations, and by interacting with her at the Tracy festival. The district court may issue an HRO if it determines there is a reasonable belief that the respondent engaged in harassment, which is manifested by unwanted acts, words, and gestures. Minn. Stat. § 609.748, subds. 5(b)(3), 1(a)(1). A reasonable belief requires proof that the harasser's conduct was unreasonable and that the victim's perception of an adverse effect on her safety, security, or privacy was reasonable. *Dunham v. Roer*, 708 N.W.2d 552, 566–67 (Minn. App. 2006), *rev. denied* (Minn. Mar. 28, 2006). Mitchell provided testimony, corroborated by another witness and credited by the district court, to support her allegations of unwanted acts and her consequent, reasonable fear. We acknowledge that Black offered testimony tending to counter each allegation. But we do not determine witness credibility or reweigh evidence on appeal, deferring instead to the district court's fact-finding role. *Kush*, 683 N.W.2d at 843–44; Minn. R. Civ. P. 52.01. Although the evidence, weighed differently, could have supported a finding in Black's favor, our deference to the district court's factual determinations leads us to conclude that the record was sufficient to support a reasonable belief that Black engaged in acts of following, monitoring, or pursuing Mitchell and that these acts constituted harassment.

Black unconvincingly maintains that the district court violated his due-process rights by failing to apply the correct definition of an HRO violation, failing to specify the "various locations" where he violated the 2022 HRO, and failing to find that he complied with the *ex parte* HRO. Black's "due process" assertions are conclusory and fail to indicate

6

whether he is complaining about some constitutional or statutory infirmity. We have already addressed his statutory-definition argument, and the record thoroughly identifies the various locations where Mitchell alleged, and the district court found, Black to have engaged in the violations. If Black is asserting that his constitutional right to due process was violated, he is mistaken. He is fundamentally entitled to notice and the opportunity to be heard, *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 635 (Minn. 2012), and the record informs us that the district court vindicated his rights in that regard. If he has some other due-process issue, he has failed to specify it, and we consider the argument no further.

We are not unsympathetic to Black's contention that the HRO substantially burdens his ability to travel and conduct business. He testified that the HRO's 500-foot restrictions preclude his access to highways and clients, and he argued further in his motion to amend the judgment that the HRO prevents his access to public services in downtown Marshall. Particularly when the parties live or work in and around the concentrated working and living spaces available in smaller towns, we presume that district courts are especially sensitive to the effects that an HRO might have on the commercial endeavors and social lives of restricted persons. This presumption is incorporated into our deference to the district court's discretion in fashioning the appropriate remedy in HRO contests. And we simply cannot on appeal substitute our judgment for that of the district court's on matters of discretion. *See Madison Equities, Inc. v. Off. of Att'y Gen.*, 967 N.W.2d 667, 671–72 (Minn. 2021). We add that Black's aerial maps and mileage calculations offered on appeal to demonstrate the HRO's potentially burdensome impact appear to be outside the record and were never presented to the district court for its consideration. We rely only on the

7

evidence in the record in our review of the district court's decision. Minn. R. Civ. App. P. 110.01. The record here contains insufficient evidence that the HRO unduly burdens Black's right to travel or engage in business.

**Affirmed.**