**Glen KUSH, Respondent,**

v.

**Neil J. MATHISON, Jr., Appellant.**

**No. A03–1686.**

Court of Appeals of Minnesota.

July 20, 2004.

Robin C. Merritt, Hanft Fride, P.A., Duluth, MN, for respondent.

Melanie P. Persellin, Michael E. Orman, Orman Nord & Spott Law Office, Duluth, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; TOUSSAINT, Chief Judge; and MINGE, Judge.

## OPINION

MINGE, Judge.

Appellant challenges the district court's issuance of a harassment restraining order, arguing that the evidence does not support the finding that his conduct constituted harassment. Because the record supports the district court's findings, we affirm.

## FACTS

Appellant Neil Mathison and respondent Glen Kush are next-door neighbors. Access to respondent's property is made by use of a written easement that burdens appellant's property. Despite numerous surveys, the parties are unable to agree on the precise location of the lot lines and easement, and an ongoing dispute between them has developed. Appellant has placed numerous "no parking" signs on his fence and property to deter respondent and others from parking on the easement so as to block the gateway that provides an alternate entrance to appellant's property. There is also an ongoing dispute regarding respondent's removal of these signs.

In October 2001, shortly after respondent purchased the property adjacent to appellant's, an incident occurred in which respondent allegedly caused damage to appellant's fence by backing into it with machinery. Later that day, the wind blew that portion of the fence down. When appellant learned of the damage, he called respondent and left him a message. When respondent returned the call, appellant asked him, "What are you going to f——ing do about the wind blowing the fence down" and told him, "You're going to regret the day you ever bought this f——ing place."

Following this incident, appellant placed "no parking" signs around the property and painted lines on the ground to mark the property line. Respondent testified that one such sign, placed in the ground near his garage, interfered with his ability to place his boat inside the garage. Respondent also testified that appellant walks

into his yard occasionally to threaten either respondent or respondent's brother.

On July 21, 2003, appellant entered respondent's property uninvited and pounded on respondent's door. Appellant yelled, "Hey, you S.O.B., when are you going to fix the fence and put the signs back up?" The minor daughter of respondent's girlfriend was present at the time. Respondent testified that when he went outside with appellant to look at the fence, appellant proceeded to swear at respondent "at the top of his lungs." Appellant also called respondent a "f——ing idiot."

Respondent filed an affidavit and petition for a harassment restraining order following the July 2003 incident. Appellant subsequently also filed a petition for a harassment restraining order against respondent and the district court held separate evidentiary hearings. The district court granted respondent's petition, issued the harassment restraining order, and this appeal follows.[1]

## ISSUE

■ Did the district court abuse its discretion in issuing a harassment restraining order against appellant?

## ANALYSIS

■ An appellate court reviews a district court's grant of a harassment restraining order under an abuse-of-discretion standard. *Witchell v. Witchell,* 606 N.W.2d 730, 731 (Minn.App.2000). A district court's findings of fact will not be set aside unless clearly erroneous, and due regard is given to the district court's op-

---

1. Respondent argues that appellant failed to provide a full transcript for the purposes of this appeal and that evidence from the separate hearing on appellant's counter-petition for a harassment restraining order should also be considered. We find no merit in this argument. There is no indication in the rec-

ord before us that the district court considered evidence from the hearing on appellant's petition as substantive evidence for respondent's petition. Accordingly, we only consider that evidence from the proceedings on respondent's petition. *See* Minn. R. Civ.App. P. 110.01.

portunity to judge the credibility of witnesses. Minn. R. Civ. P. 52.01. But this court will reverse the issuance of a restraining order if it is not supported by sufficient evidence. *See Bjergum v. Bjergum,* 392 N.W.2d 604, 606–07 (Minn.App.1986).

Harassment is defined as "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security or privacy of another...." Minn.Stat. § 609.748, subd. 1(a)(1) (2002). But inappropriate or argumentative statements alone cannot be considered harassment. *Beach v. Jeschke,* 649 N.W.2d 502, 503 (Minn.App.2002). A court may grant a harassment restraining order when "the court finds at the hearing that there are reasonable grounds to believe that the respondent has engaged in harassment." Minn.Stat. § 609.748, subd. 5(a)(3) (Supp.2003). A district court must base its findings in support of a restraining order on testimony and documents properly admitted. *Anderson v. Lake,* 536 N.W.2d 909, 911–12 (Minn.App.1995).

Appellant argues that the record does not support the finding that his actions constitute harassment. First, appellant argues that his statements in the October 2001 incident could not be "intrusive or unwanted" because respondent had called appellant. We find no authority that excuses conduct based upon which party made the phone call. We are not persuaded by the contention that appellant's statements were less intrusive merely because respondent, in returning appellant's call, physically dialed the telephone. Appellant initiated the contact and respondent responded by returning the call. Nothing in the statute precludes its application in this situation.

Next, appellant argues that the district court erred in finding that the October 2001 and July 2003 incidents constituted harassment because it ignored the circumstances surrounding the incidents, which stemmed from his displeasure regarding the damaged fence and ongoing property dispute. The question before the district court, however, was not why appellant conducted himself in the manner he did, but whether appellant's actions had, or were intended to have, a substantial adverse effect on the safety, security, or privacy of respondent. *See* Minn.Stat. § 609.748, subd. 1(a)(1).

Appellant next argues that, even if the two specific incidents in October 2001 and July 2003 can be considered harassing incidents, the lapse of 22 months between the incidents must negate the finding that the incidents were "repeated." We note that although the district court order only specifically details two incidents, the lack of specificity is not fatal to the district court's findings. *See Davidson v. Webb,* 535 N.W.2d 822, 823–24 (Minn.App.1995) (affirming the district court's finding of harassment even though witness could not remember specific dates or conversations). Here, the order and the record go further in noting intervening incidents of harassing conduct.

In addition to its findings regarding the two specific incidents, the district court found that appellant's other harassing conduct gave context to an ongoing situation. This conduct included harassing face-to-face encounters, telephone threats of physical violence, use of crude and profane language, blocking or restricting access to respondent's property with multiple "no parking" signs, calling respondent abusive and profane names, and uninvited visits to respondent's property. The district court found that appellant had threatened to "kick his [respondent's] f——ing ass." Further, respondent also testified to appellant "constantly telling" him

that appellant would "make me regret the day I bought the property.... And he's constantly threatening me—he's going to bring me to court and it's going to cost me thousands and hundreds of thousands of dollars to defend myself and he's going to wind up with my property...." With due regard given to the district court's opportunity to determine the credibility of witnesses, we find that the record amply supports the district court's findings that appellant's conduct constituted "repeated incidents."

Finally, appellant claims that respondent failed to show that the October 2001 and July 2003 incidents caused a "substantial adverse effect ... on the safety, security, or privacy" of respondent. Appellant argues that the record does not support the district court's findings that his behavior was "intended to have a substantial adverse affect on the safety and security of [respondent], by intimidating him and threatening him in an effort to force [appellant's] will and control over [respondent]." The district court concluded that appellant's "behavior has had a substantial adverse effect on the safety, security and privacy of [respondent] in that he feels apprehensive and fearful of [appellant] based on [appellant's] threats and intimidation. If [appellant] acted upon his threats, an obvious, substantial, adverse effect would follow."

The record amply supports the district court's findings. At trial, when asked if appellant had made any phone calls that he considered to be threatening, respondent specifically testified to the October 2001 incident. Furthermore, respondent also testified that the July 2003 incident caused him fear and apprehension. Respondent went on to state that "[appellant is] constantly threatening to kick my f-ing ass and make me regret the day I bought my place" and noted that appellant's behavior scares and intimidates his family.

The determination of whether certain conduct constitutes harassment may be judged from both an objective standard, when assessing the effect the conduct has on the typical victim, and a subjective standard, to the extent the court may determine the harasser's intent. We note the statutory language includes incidents "that have ... or are intended to have a substantial adverse effect." Minn. Stat. § 609.748, subd. 1(a)(1). When a district court determines that repeated conduct is objectively harassing, it is not precluded from making findings that harassing incidents occurred simply because the defendant suggests that his/her conduct could be "handled" by people with significant fortitude or that the intended victim has such fortitude. Here, respondent's testimony that he "can handle" the effects of appellant's behavior does not negate evidence that appellant's conduct was unwanted and intrusive, and had a substantial adverse effect on respondent. We conclude that this record contains clear, repeated incidents that support the district court's determination that appellant's conduct objectively constitutes harassment.

Conversely, we note that even lesser levels of conduct may still support an order when calculated to harass a fragile person. We also note that such behavior often affects individuals other than the directly intended victim. In many cases, as here, children are present and may either witness the behavior first-hand or develop a sense of fear given the substantial effects the harassing conduct has on the adults around them.

We do not suggest that the law mandates "Minnesota nice" or some artificial code of civility, as appellant contends. The legislature has determined that certain conduct is sufficiently offensive and disturbing that it is not tolerable in civi-

lized society. Individuals are free to express outrage that someone has damaged their property. But there are limits to such expressions in order to keep peace in the community. *See N.Y. State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1343 (2nd Cir.1989) ("There is no constitutional privilege to assault or harass an individual . . . ."); *cf. Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942) (concluding that fighting words are not protected speech); *Welsh v. Johnson,* 508 N.W.2d 212, 215 (Minn.App.1993) (stating that free speech is subject to "reasonable time, place and manner restrictions."). To this end, the harassment laws place carefully limited restraints on individuals whose conduct goes beyond an acceptable expression of outrage and civilized conduct, and instead causes a substantial adverse effect on another's safety, security or privacy. The determination of what constitutes an adequate factual basis for a harassment order is left to the discretion of the district courts. Here, the district court properly found that appellant crossed that line.

### DECISION

Because the record amply supports the district court's findings, we conclude that the issuance of the harassment restraining order was not an abuse of discretion.

**Affirmed.**