*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2163**

Christopher Eugene Engelmann, petitioner,
Respondent,

vs.

Ann Christos,
Appellant.

**Filed October 26, 2015
Affirmed
Hooten, Judge**

Ramsey County District Court
File No. 62-HR-CV-14-612

Ann Christos, Inver Grove Heights, Minnesota (pro se appellant)

Christopher Eugene Engelmann, St. Paul, Minnesota (pro se respondent)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Worke, Judge.

## UNPUBLISHED OPINION

**HOOTEN**, Judge

On appeal from the district court's issuance of a harassment restraining order (HRO) to respondent, appellant argues that the HRO is not supported by the record and constitutes an unconstitutional restraint upon her right of free speech. We affirm.

**FACTS**

Appellant Ann Christos met respondent Christopher Eugene Engelmann at a church in St. Paul in 2013. Christos and Engelmann were initially friends, but their relationship deteriorated over time. On October 29, 2014, Engelmann filed a petition for an HRO against Christos, alleging that Christos: (1) screamed profanities at him on two occasions; (2) sent him repeated text messages after being informed that he wanted no further contact with her; (3) called his wife twice with allegations of sexual misconduct; and (4) picketed outside his place of employment. Engelmann stated that Christos' conduct made him "feel fearful and uncomfortable" at home, at his place of employment, and at his church, and that he was afraid her behavior would continue to escalate.

The district court granted an ex parte HRO. Christos contested the order, and an evidentiary hearing was held before a referee on December 19, 2014. Both parties testified at the hearing, and neither was represented by an attorney.

Engelmann testified that he and Christos were friends for a period of time and that he met her sometimes at his church. Engelmann stated that, one day when he was worshipping at his church, Christos entered and began yelling at him and exhibiting "[b]izarre" behavior. He also stated that Christos telephoned his wife, falsely accusing him of sexual improprieties. In April or May of 2014, Engelmann advised Christos that he did not want her to contact him, but Christos persisted in sending him approximately 570 text messages. Engelmann offered phone records and text messages into the record showing the volume and content of the messages from Christos, and the district court

2

received this evidence. Engelmann also stated that Christos sat in her car outside his house and picketed outside his place of employment.

At the hearing, Christos testified that she had once been "unkind" to Engelmann, referring to the church incident, that she had called his wife because she heard that he was having an affair with a bartender at his place of employment, and that she had "probably" sent hundreds of text messages to Engelmann. But, Christos denied that Engelmann had advised her not to contact him and claimed that Engelmann had in fact responded to her text messages. Christos was unable to offer any evidence of the text messages that she claimed Engelmann had sent her. Christos also admitted that she had picketed the bar where Engelmann worked in an attempt to publicize her belief that the bartender, whom she alleged was having an affair with Engelmann, practiced witchcraft and that the bar was not a reputable place.

At the close of the hearing, the district court granted the HRO, prohibiting Christos from being within two city blocks of Engelmann's home or place of employment and from attending Engelmann's church at specified times. The district court found that Christos engaged in harassment that "has or is intended to have a substantial adverse effect on [Engelmann's] safety, security, or privacy." Christos appealed from the HRO.

## DECISION

## I.

Christos argues that the HRO is unsupported by the evidence. This court reviews the district court's issuance of an HRO for abuse of discretion. *Peterson v. Johnson*, 755

N.W.2d 758, 761 (Minn. App. 2008). "A district court's findings of fact will not be set aside unless clearly erroneous, and due regard is given to the district court's opportunity to judge the credibility of witnesses." *Kush v. Mathison*, 683 N.W.2d 841, 843–44 (Minn. App. 2004) (citing Minn. R. Civ. P. 52.01), *review denied* (Minn. Sept. 29, 2004).

A court may grant an HRO if it finds that "there are reasonable grounds to believe that the [actor] has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3) (2014). Harassment includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." *Id.*, subd. 1(a)(1) (2014). To obtain an HRO, the petitioner must prove: (1) "objectively unreasonable conduct or intent on the part of the harasser"; and (2) "an objectively reasonable belief on the part of the person subject to harassing conduct" of a substantial adverse effect on the person's safety, security, or privacy. *Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006). Here, the district court found that there were reasonable grounds to believe that Christos had harassed Engelmann and that "[t]he harassment has or is intended to have a substantial adverse effect on [Engelmann's] safety, security, or privacy," citing the repeated text messages, the calls to Engelmann's wife, and the picketing outside of Engelmann's place of employment to support the issuance of the HRO.

**Text Messages**

The district court found that Christos harassed Engelmann by texting him repeatedly after he had asked her not to contact him. In making this finding, the district

4

court credited Engelmann's testimony that he had asked Christos in the spring of 2014 to stop contacting him and had blocked her number on his phone. By finding that Engelmann's testimony was credible and that Christos "sent repeated text messages after being informed that [Engelmann] wanted no further contact with [Christos]," the district court implicitly rejected Christos' conflicting testimony.

By continuing to send hundreds of text messages to Engelmann after being told that he no longer wished to have contact with her, Christos engaged in objectively unreasonable conduct. The district court did not clearly err in finding that sending repeated text messages was an intrusive act that had a substantial adverse effect on Engelmann's privacy.

**Calls to Engelmann's Wife**

The district court found that Christos had harassed Engelmann by calling his wife. Engelmann testified that Christos contacted his wife twice, including once at their unlisted home phone number, and told her that Engelmann was having an affair with the bartender, creating "a great deal of hardship in [his] relationship with [his] wife." After Christos called his wife, Engelmann explained to his wife that Christos "was suffering from some issues" and that the allegations were not true. At the hearing, Christos explained that she "just felt" that the bartender "was having something to do with [Engelmann]," and she "called [Engelmann's] wife with allegations of sexual misconduct so that his wife could help him."

Christos' conduct, viewed objectively, had a substantially adverse effect on Engelmann because her conduct unreasonably interfered with his privacy by intruding on

5

and creating distrust in his relationship with his wife. The district court did not clearly err in concluding that Christos harassed Engelmann by calling his wife.

**Picketing Place of Employment**

The district court also found that Christos engaged in harassment by picketing Engelmann's place of employment. Engelmann testified that Christos "had a sign in front of [Engelmann's place of employment] accusing the [bartender] of witchcraft, prostitution," which directed persons "to ask the former manager about this." Christos admitted that she had picketed Engelmann's place of employment, explaining that she felt that it was not a reputable place of business. When the district court asked Christos, "When you decided to picket was this aimed at reforming [Engelmann]?," she responded, "Well, I wanted to move him along. . . ." In granting the HRO, the district court found that Christos, "in an attempt to help [Engelmann] change his ways, picketed outside [Engelmann's] place of business alleging that an employee of the business practices witchcraft and is engaged in prostitution."

Christos' conduct in picketing the building, though purportedly directed at the actions of the bartender, was actually directed at Engelmann, as demonstrated by her explanation of her picketing as an attempt to reform Engelmann. By picketing Engelmann's place of employment in an attempt to correct alleged defects in his personal life, Christos committed an intrusive act that had a substantial adverse effect on Engelmann's privacy. The district court did not clearly err in concluding that Christos' conduct in picketing Engelmann's place of employment established one intrusive act that had a substantial adverse effect on Engelmann's privacy.

6

Based on this record, we conclude that the district court properly exercised its discretion by issuing the HRO because "there are reasonable grounds to believe that the respondent has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3).

## II.

Christos alleges that the harassment statute is unconstitutional because it is overbroad and because it is a prior restraint on her speech. Christos also argues that: (1) the district court lacked jurisdiction to hear this matter; (2) the referee was personally involved in the case; and (3) the HRO granted protection to the employees of Engelmann's place of business, even though it was only supposed to protect Engelmann. However, Christos did not raise any of these issues before the district court. "A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." *Thiele v. Stitch*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). Because these arguments were raised for the first time on appeal, they are not properly before this court for review.

**Affirmed.**