*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0251**

Sharper Management, LLC, et al., petitioners,
Appellants,

vs.

Melvin Pittel,
Respondent.

**Filed August 29, 2016
Affirmed
Cleary, Chief Judge**

Hennepin County District Court
File No. 27-CV-15-17138

Phaedra J. Howard, Joseph M. Barnett, Hellmuth & Johnson, P.L.L.C., Edina, Minnesota (for appellants)

Jevon C. Bindman, Martin S. Fallon, Maslon LLP, Minneapolis, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Cleary, Chief Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CLEARY**, Chief Judge

On appeal from the district court's denial of their request to extend their harassment restraining order (HRO) against respondent Melvin Pittel, appellants Sharper Management,

LLC and Westbrooke Condominium Association argue that the district court (1) abused its discretion when it denied their request for an extended HRO; and (2) erred in concluding that the requested extension of the HRO constituted a prior restraint on speech. We affirm.

**FACTS**

Respondent owns a condominium at Meadow Creek Condominiums (Meadow Creek) in Hopkins. Appellant Westbrooke Condominium Association (the board) is the managing board of the Meadow Creek owners' association, and appellant Sharper Management, LLC is a company hired by the board to manage Meadow Creek's daily operations. Appellants and respondent have a history of disagreement regarding the board's actions and management of Meadow Creek. Some of these disagreements have resulted in litigation. Respondent previously created three public websites where he posted criteria of the board and board members' personal information.

In December 2013, appellants obtained a two-year HRO against respondent. The HRO ordered respondent to shut down the three websites and prohibited him from "creating or maintaining any website to harass [appellants] or their agents." The HRO ordered respondent to stay away from the Meadow Creek office and community room, and prohibited him from attending board meetings. It provided that respondent could submit his vote at board meetings by proxy and could voice concerns to the board in writing. Respondent appealed the HRO, challenging the provision that ordered him to immediately shut down his websites. *Westbrooke Condo. Ass'n v. Pittel*, No. A14-0198, 2015 WL 133874, at *1 n.1 (Minn. App. Jan. 12, 2015). This court affirmed the district court, holding that respondent had used the websites in a way that "substantially affected [appellants']

2

privacy interests," and therefore had engaged in harassment as defined by Minn. Stat. § 609.748, subd. 1(a)(1) (2012). *Id.* at *2-3.

In January 2014, appellants requested a finding of contempt, alleging that respondent had violated provisions of the HRO by creating a new website to harass them. The district court denied appellants' request. In October 2015, appellants petitioned the district court for an extended restraining order. Appellants alleged that respondent had repeatedly violated the 2013 HRO. A board member and two employees of appellant Sharper Management, LLC submitted affidavits alleging that respondent had harassed them on his new website.

After an evidentiary hearing, the district court found that respondent's online posts were "often unpleasant and offensive to their targets," but concluded that appellants had failed to prove that respondent's online activity amounted to harassment as defined by statute. The district court also found that respondent did not violate the HRO when he tried to vote at board meetings by assigning a power of attorney to another resident, instead of using Meadow Creek's established procedure for proxy voting. The district court dismissed the case and terminated the temporary restraining order that had been in effect. This appeal followed.

## D E C I S I O N

Appellants argue that the district court abused its discretion by ignoring and mischaracterizing evidence of harassment by respondent and by denying their request for an extended HRO. This court reviews a HRO issued under Minn. Stat. § 609.748 (2014) for an abuse of discretion. *Roer v. Dunham*, 682 N.W.2d 179, 182 (Minn. App. 2004).

3

This court will not set aside the district court's findings of fact unless they are clearly erroneous, and due regard is given to the district court's opportunity to judge the credibility of witnesses. *Kush v. Mathison*, 683 N.W.2d 841, 843-44 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004); Minn. R. Civ. P. 52.01.

A district court may issue a HRO if it finds "reasonable grounds to believe that [a person] has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3). "Harassment" includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target." Minn. Stat. § 609.748, subd. 1(a)(1). This court has observed that

> the language of the statute is directed against constitutionally unprotected "fighting words" likely to cause the average addressee to fight or protect one's own safety, security, or privacy; "true threats" evidencing an intent to commit an act of unlawful violence against one's safety, security or privacy; and speech or conduct that is intended to have a substantial adverse effect, i.e., is in violation of one's right to privacy.

*Dunham v. Roer*, 708 N.W.2d 552, 566 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006).

Before a court may issue an HRO, the statute requires "both objectively unreasonable conduct or intent on the part of the harasser and an objectively reasonable belief on the part of the person subject to harassing conduct." *Id.* at 567. "[I]nappropriate or argumentative statements alone cannot be considered harassment." *Kush*, 683 N.W.2d at 844. There must be sufficient evidence to support issuance of an HRO. *Id.*

4

In this case, the district court concluded that appellants had failed to provide evidence sufficient to show that respondent had violated the existing HRO by engaging in harassment as defined by Minn. Stat. § 609.748. Record evidence supports the district court's conclusion.

The district court found that respondent's criticism of appellants "may have been legally defamatory," but concluded that respondent's actions did not implicate appellants' safety, security, or privacy. Nothing in the record indicates that the district court clearly erred in making findings or erred in its application of law. After hearing testimony and appellants' closing argument, the district court pressed counsel for appellants to show how respondent's activities had created or were intended to create a substantial adverse effect on appellants' safety, security, or privacy. Appellants conceded that respondent had not incited violence or threatened anyone. But appellants argued that nonetheless, respondent made them feel unsafe.

The owner of appellant Sharper Management, LLC testified, "[S]ometimes I question whether or not [my employee] is safe [at Meadow Creek]." The witness did not further specify how respondent had adversely affected the employee's safety. A former president of the board testified that he is concerned about his own safety due to respondent's activities, and stated that his wife "is petrified based on the incidents and the things that have been said." On cross-examination by respondent, the witness conceded that his wife had never been mentioned on the website, but stated that his home had been mentioned. The district court found that respondent did not post appellants' personal

information on the new website he created after issuance of the 2013 HRO. On review, no evidence suggests that the district court clearly erred in making that finding.

Witnesses for appellants testified to their discomfort and frustration with what they view as respondent's dissemination of misinformation. They testified that they are concerned that respondent's actions create a negative public impression of Meadow Creek. An employee of appellant Sharper Management, LLC testified that she felt respondent called her "stupid" on his website, and that respondent's critiques could "negatively affect how people see me as the manager of the association." The former president testified that he had recently declined to run for a board office "because of the ongoing electronic assaults against me." He testified that respondent had continued to post content online that portrayed him as a thief, and stated that he believed he is respondent's "premier target."

Before issuing an HRO, a court must find that the person subject to harassment also had an objectively reasonable belief that their safety, security, or privacy was adversely affected. *Dunham*, 708 N.W.2d at 567. The testimony elicited in this case amounts to no more than general, subjective assertions of fearfulness or insecurity, which falls short of the standard set forth in *Dunham*. The record supports the district court's finding that respondent "engaged in some name-calling, negative insinuations, accusations and conjecture" and that "[respondent's] writings were often unpleasant and offensive to their targets." The district court correctly applied the law to its factual findings when it concluded that appellants failed to prove that respondent's "upsetting and offensive"

6

actions rose to the level of harassment, as defined by Minn. Stat. § 609.748.[1]  The district court did not abuse its discretion when it declined to extend appellant's HRO.

Appellants also argue that the district court erred because it concluded that the 2013 HRO is a prior restraint on speech, even though this court had previously upheld the constitutionality of the HRO in *Westbrooke Condo. Ass'n*, 2015 WL 133874 at *3.  The hearing transcript and the district court's memorandum indicate that the district court was concerned about First Amendment protections for speech.  The district court discussed the topic at length in the evidentiary hearing and in its memorandum.  But the district court's decision did not rest on whether the HRO was constitutional.  It was based on whether respondent had violated the existing HRO by engaging in harassment.  The district court found that respondent had not violated the HRO, and the court explained why respondent's actions did not amount to harassment, as defined by law.  We decline to reach appellants' argument regarding the district court's constitutional analysis, because it is not the basis on which the court denied appellants' request for an extended HRO.

**Affirmed.**

---

[1] During oral argument before this court, counsel for appellants argued that respondent's actions jeopardized appellants' economic security, because, among other things, respondent's actions allegedly discouraged potential tenants from renting units at Meadow Creek.  Appellants did not argue this theory before the district court, therefore it is not properly before this court under *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988). Additionally, appellants cited no published case law to support the argument that Minn. Stat. § 609.748 encompasses *economic* security.