*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0146**

Nathan Gregor, et al., petitioners,
Respondents,

vs.

Dawn Marie Buttera Gregor,
Appellant.

**Filed August 29, 2016
Affirmed
Cleary, Chief Judge**

Olmsted County District Court
File No. 55-CV-15-4340

Amber Marie Lawrence, Rochester, Minnesota (for respondents)

Dawn Marie Buttera Gregor, St. Paul, Minnesota (pro se appellant)

Considered and decided by Larkin, Presiding Judge; Cleary, Chief Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CLEARY**, Chief Judge

Appellant Dawn Marie Buttera Gregor challenges the district court's October 6, 2015 order granting respondents Nathan Gregor and Stephanie Cunningham Gregor's petition for a harassment restraining order (HRO) against her. Appellant argues that the

district court abused its discretion by concluding she had engaged in harassment by making numerous telephone calls to respondents' residence and by twice asking police to conduct child welfare checks at respondents' residence. Because the district court did not abuse its discretion by granting respondents' petition, we affirm.

**FACTS**

Appellant and Nathan Gregor are divorced. They have a 13-year-old son, B.G. After their 2008 divorce, they shared legal and physical custody of their son and both continued to reside in Rochester, Minnesota. Nathan Gregor is now married to Stephanie Cunningham Gregor.

In spring 2012, appellant decided to relocate to Minneapolis. She began planning for B.G. to move with her and enroll in school there. Nathan Gregor objected and maintained that their son should continue to live in Rochester.

In November 2012, the district court granted Nathan Gregor's motion for emergency relief to prevent appellant from picking up B.G. from school when she did not have parenting time. A few days later, appellant called the police to have them conduct a child welfare check at respondents' residence. The district court later found that there was no evidence that appellant had a reasonable concern about their son's welfare. In December 2012, respondents were granted an HRO against appellant based on appellant's threatening and disparaging communications to them.

In January 2013, appellant violated a court order and enrolled B.G. in school in Minneapolis. After a few days, he was returned to respondents' care. On January 23, 2013,

the district court suspended appellant's unsupervised parenting time. Shortly after the order was issued, appellant asked police to conduct a welfare check at respondents' residence, falsely claiming that Nathan Gregor was depriving her of parenting time. Following several more incidents, the court ordered that all of appellant's parenting time must be supervised at the Family Access Center (FAC) facility. Appellant again requested a welfare check that sent police officers to respondents' residence. On July 10, 2013, the district court granted respondents a two-year HRO against appellant based on her threatening behavior, abusive communications, and uninvited visits to their residence.

In June 2014, Nathan Gregor was awarded sole legal and physical custody of B.G., subject to appellant's parental visitation rights, as defined by the court. Appellant was permitted limited parenting time, beginning with several phone calls per week and expanding to larger blocks of unsupervised parenting time over six months, depending on compliance with the order. Appellant sought review of the district court's order and the order was affirmed. *Gregor v. Gregor*, No. 14-1920 (Minn. App. Feb. 8, 2016).

On October 6, 2015, the district court granted respondents' petition for another HRO against appellant. The court concluded that appellant engaged in harassment by calling respondents' residence "approximately 12 times over the course of 11 days" and by requesting "two welfare child status checks on the parties' joint minor child while the minor child was with [respondents] in April and May 2015." Subsequently, the district court denied appellant's motion for a new trial.

This appeal followed.

3

Appellant argues that the record is insufficient to support the issuance of an HRO against her. This court reviews a district court's grant of an HRO under an abuse-of-discretion standard. *Kush v. Mathison*, 683 N.W.2d 841, 843 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004). "[T]his court will reverse the issuance of [an HRO] if it is not supported by sufficient evidence." *Id.* at 844. In reviewing whether a district court abused its discretion by issuing an HRO, this court considers the broader context in which the alleged harassment took place. *Witchell v. Witchell*, 606 N.W.2d 730, 732 (Minn. App. 2000).

A court may issue an HRO if it finds that "there are reasonable grounds to believe that the [actor] has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3) (2014). Harassment requires "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." *Id.*, subd. 1(a)(1). To obtain an HRO, the petitioner must prove: (1) "objectively unreasonable conduct or intent on the part of the harasser," and (2) "an objectively reasonable belief on the part of the person subject to harassing conduct" of a substantial adverse effect on the person's safety, security, or privacy. *Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006).

Appellant engaged in objectively unreasonable conduct. In April and May 2015, appellant requested that police go to respondents' residence to investigate B.G.'s safety. Appellant argues that these child welfare checks were an effort to reestablish

4

communication with her son. However, this is not a justification for sending law enforcement officers to perform disruptive visits to respondents' residence. Appellant allegedly admitted to officers after the May 2015 welfare check that she had not had contact with B.G. since the April child welfare check and had no reason to believe that anything had changed with respect to his welfare. Appellant repeatedly sending police to respondents' residence was objectively unreasonable.

In support of granting the petition, the district court also cited the number of telephone calls that appellant placed to respondents. These calls alone would be insufficient to support the issuance of an HRO. However, considering appellant's actions in the broader context of the relationship, and relying primarily on appellant's use of unfounded child welfare checks to send police to respondents' residence, the district court did not abuse its discretion by finding appellant's actions objectively unreasonable.

In addition to objectively unreasonable conduct, an HRO requires "an objectively reasonable belief on the part of the person subject to harassing conduct" of a substantial adverse effect on the person's safety, security, or privacy. *Dunham*, 708 N.W.2d at 567. Respondent expressed great concern about the child welfare checks and their impact on his family. In the petition for the HRO, respondents stated about the police visits, "When this happens it is very alarming to our children, family, friends, neighbors and especially [their son], the very child we are trying to protect from this unnecessary emotional abuse from his mother!"

The checks included police entering the residence and questioning both the child and respondents. This is an inherently intrusive event and seriously impinges on

5

respondents' privacy. The district court found respondents credible and concluded that appellant's calls to police were not motivated by a good faith, reasonable belief that B.G.'s welfare was endangered. The court did not abuse its discretion by concluding that respondents held an objectively reasonable belief that the harassing conduct had a substantial effect on their safety, security, or privacy.

Accordingly, the district court did not abuse its discretion by issuing the HRO because "there are reasonable grounds to believe that the [appellant] . . . engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3).

**Affirmed.**