*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1403**

Kia Angel Barnes for self and on behalf of minor children,
Respondent,

vs.

Corey Holiday,
Appellant.

**Filed August 26, 2024
Affirmed; motion denied
Ross, Judge**

Hennepin County District Court
File No. 27-CV-22-17034

Kia Barnes, St. Paul, Minnesota (self-represented respondent)

Corey Holiday, Minneapolis, Minnesota (self-represented appellant)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Jesson, Judge.*

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

The district court issued two harassment restraining orders—one against appellant Corey Holiday for harassing respondent Kia Barnes and the other against Barnes for harassing Holiday. Because the record contains evidence supporting the district court's

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

finding that Holiday harassed Barnes, including evidence that Holiday posted a Facebook message indicating that he had placed a $3,500 bounty on her, we affirm.

## FACTS

Kia Barnes and Corey Holiday met in June 2022. The two began some sort of arrangement concerning the repair and sale to a third party of a BMW car that Barnes owned. After Holiday expended money and labor to repair the car, he tried unsuccessfully to get Barnes to agree to finalize the sale, and Barnes stopped responding to Holiday's attempts to finalize the deal. Holiday's communications to Barnes became "insulting," "demeaning," and "accusatory." Barnes told Holiday to stop contacting her and blocked him from doing so on various electronic communication platforms. Holiday then began posting disparaging messages about Barnes on social media. One of his 30 to 40 posts included a September 2022 photo of Barnes with a caption stating, "I GOT A $3500 BOUNTY FOR MS Barnes Kia." Barnes interpreted the post as Holiday's offer to pay for an attacker to assault her.

Barnes petitioned the district court in November 2022 to issue a harassment restraining order (HRO) against Holiday, alleging that, between September and November 2022, Holiday had engaged in various allegedly harassing conduct: followed, monitored, or pursued her; made uninvited visits to her; threatened her on 17 occasions; stole property from her; and used her information to solicit sex acts. Holiday also petitioned the district court, seeking an HRO against Barnes. The district court conducted a hearing on both petitions. After receiving testimony and other evidence, the district court issued an HRO, effective until November 17, 2024, prohibiting Holiday from harassing or having any

2

contact with Barnes or her minor children. The district court also issued an HRO against Barnes, but the validity of that order is at issue in a different appeal before this court.

Holiday appealed and the parties filed opposing briefs. Holiday's reply brief, appended with documents, accused Barnes of fabricating the evidence of the bounty post and lying during the hearing. Barnes moved this court to strike the reply brief and its attachments, asserting that it contained evidence outside the record. An order deferred to this panel the ruling on Barnes's motion to strike. We now decide the motion to strike and address the merits of the appeal.

**DECISION**

Holiday appears to contend that the district court lacked sufficient evidence to issue the HRO against him. The district court may, in its discretion, issue a requested HRO if it finds that the petitioner was subjected to harassment. *See* Minn. Stat. § 609.748, subd. 2 (2022); *Kush v. Mathison*, 683 N.W.2d 841, 843–44 (Minn. App. 2004), *rev. denied* (Minn. Sept. 29, 2004). Harassment includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target." Minn. Stat. § 609.748, subd. 1(a)(1) (2022). We will not reverse a district court's determination that a party engaged in harassment unless it is unsupported by sufficient evidence. *Kush*, 683 N.W.2d at 844. For the following reasons, we are satisfied that the record contains sufficient evidence to support the HRO.

Applying this standard of review, we are certain that the district court acted within its discretion here. The district court found that Holiday "posted on Facebook that he had

3

a $3500 bounty on [Barnes's] life." It also found that his text messages to Barnes were numerous and unwanted and that they demonstrated an "unusual persistence" that was "objectively unreasonable." It characterized them as "insulting," "demeaning," and "accusatory." Holiday contends that neither the bounty post nor the text messages support the district court's decision to issue the HRO. His contentions are not persuasive.

Holiday does not contend that the bounty post, if genuine, would not constitute harassment. He instead argues that the district court should not have relied on the exhibit depicting the post because, according to him, it was "digitally manipulated." His contested reply brief includes what he asserts was his actual post before the alleged alteration. But our duty on appeal is to determine whether the district court considered the evidence before it and properly decided the relevant legal issues based on that evidence, not to judge speculatively how the district court should have decided the case had it been given other evidence. We therefore do not base our review on any exhibits, like those attached to and referenced in Holiday's reply brief, that were not submitted to and received by the district court. *See* Minn. R. Civ. App. P. 110.01 (defining the record on appeal); *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn. 1988) (emphasizing that appellate courts cannot base their rulings on matters outside the record on appeal). Because we must base our decision on the evidentiary record developed in the district court, we need not decide Barnes's motion to strike documents and assertions outside the record. The district court heard Holiday's claim that Barnes had provided altered evidence and is in the best position to determine credibility and weigh the evidence. *Kush*, 683 N.W.2d at 843–44. The district court did not

4

credit Holiday's assertions, and we will not reevaluate Holiday's credibility on appeal. Holiday has failed to establish that the HRO is unsupported by sufficient evidence.

Holiday argues that the district court should not have treated his text messages to Barnes as harassment, maintaining that they "were strictly for the purpose of business with regards to the vehicle." The content of many of his text messages belies the notion that they were "strictly" purposed for business. The messages may have begun with a business purpose. But their tone devolved, and they more accurately seem purposed to demean Barnes with insults like, for example, "you . . . ugly bummpy face grimey bitch," among other similarly sophomoric and misspelled smears not common in "business" discourse. The record supports the district court's characterization of the text messages as harassment.

**Affirmed; motion denied.**