*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0980**

Benita M Brannon,
Respondent,

vs.

John Sterling Howe,
Appellant.

**Filed February 23, 2026**
**Affirmed**
**Segal, Judge***

Hennepin County District Court
File No. 27-HA-CV-24-1282

Christopher J. Cadem, Fergus Falls, Minnesota (for respondent)

James T. Smith, Huffman, Usem, Crawford, Greenberg & Smith, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Connolly, Judge; and Segal, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**SEGAL**, Judge

Appellant challenges the district court's grant of a harassment restraining order (HRO), arguing that his conduct was not objectively unreasonable and did not have a substantial adverse effect on respondent that was objectively reasonable. We affirm.

## FACTS

Respondent Benita M Brannon filed a petition for an HRO against appellant John Sterling Howe. Both Brannon and Howe testified at the petition hearing.

The following summarizes Brannon's testimony. Brannon came in contact with Howe because Howe was involved in a relationship with Brannon's daughter, R.B. The relationship was "very volatile," involved "[l]ots of fights" and "domestic violence," and was "[h]ighly dysfunctional." During Howe's relationship with R.B., Brannon communicated repeatedly to Howe that Brannon wanted no contact with him. She further testified that she called the police at least five different times because Howe would not leave the area by her apartment building.

The immediate events that caused Brannon to file an HRO petition occurred in October 2024, after Brannon received a message from R.B. that Howe had kicked her out of his house. R.B. advised Brannon that Howe had entered the garage at Brannon's apartment complex and left R.B.'s belongings in Brannon's parking space. The apartment complex, including the garage, has security doors that require a key fob or passcode for entry. The apartment complex also has a policy that prohibits residents from allowing

uninvited people entry into the complex. Brannon had not given Howe permission to enter her garage.

Four days later, Howe again entered Brannon's garage without Brannon's permission and took the car that R.B. had been driving. Brannon had told R.B. to park her car in Brannon's space in the garage. It was Brannon's understanding that Howe had earlier given the car to R.B. as a gift. Brannon testified that she believed Howe entered the garage around "[t]wo [or] three in the morning" and that his conduct "creeped [her] out."[1] She stated: "[M]y house door . . . has an old-fashioned key. I was afraid that somehow he was going to get in the house. I was afraid to leave my daughter alone. I was afraid to be here. I didn't know what was going to happen."

Brannon testified that Howe's actions have made her feel extremely threatened and intimidated. She testified that she has sought therapy, changed her routines and habits, and moved, keeping her new address secret. Brannon testified: "I don't know where he's going to be. . . . I keep looking over my shoulder. I'm afraid that he follows me to work. I'm afraid that he put a GPS on my car like he put on [R.B.]'s car to know where we are."

In Howe's testimony, he acknowledged that he entered Brannon's garage twice without her permission. He alleged that he entered the garage the first time as a favor to R.B. so that she would have her belongings. Howe agreed that he gained entrance to the garage by driving through the exit door as another resident was leaving.

---

[1] Howe testified that he entered the garage in the morning, not in the middle of the night.

Howe testified that he went to the garage a second time to retrieve his car. He alleged that he had purchased the car from a used-car dealer and that the car was registered to his business. He acknowledged that he had allowed R.B. to use the car but denied that the car was a gift to R.B. Howe testified that he gained entry to the garage the second time by asking a resident who was walking his dog to allow him into the garage so that he could get his car.

The district court granted Brannon's petition for an HRO. The district court fully explained its reasoning in a written order and did not just check boxes on a form. In the order, the district court found that Brannon's testimony was more credible than Howe's. The district court concluded that Howe's actions in entering the secure garage area of Brannon's building, without her permission or knowledge, were objectively unreasonable and "had a substantial adverse effect on [Brannon]'s safety, security and privacy as she has suffered emotional distress as a result of not knowing if [Howe] will take these actions and invade her privacy or place her safety and security at risk again."

**DECISION**

Howe argues that the district court abused its discretion by granting Brannon an HRO, claiming that his conduct was reasonable and did not have an objectively reasonable adverse effect on Brannon.

We review a district court's grant of an HRO for abuse of discretion. *Kush v. Mathison*, 683 N.W.2d 841, 843 (Minn. App. 2004), *rev. denied* (Minn. Sept. 29, 2004). In doing so, we review the district court's findings of fact for clear error and defer to the district court's credibility determinations. *Id.* at 843-44; *see* Minn. R. Civ. P. 52.01

4

("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses."). When reviewing factual findings for clear error, appellate courts (1) view the evidence in the light most favorable to the findings, (2) do not find their own facts, (3) do not reweigh the evidence, and (4) do not reconcile conflicting evidence. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021); *see Wilson v. Wilson*, 11 N.W.3d 331, 337 (Minn. App. 2024) (citing *Kenney* in HRO appeal), *rev. denied* (Minn. Dec. 17, 2024).

A district court may grant a petition for an HRO if it finds that "there are reasonable grounds to believe that the respondent has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b) (2024). Harassment, as defined in the statute, includes "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." *Id.*, subd. 1(a)(1) (2024). Harassment is conduct that "goes beyond an acceptable expression of outrage and civilized conduct and instead causes a substantial adverse effect on another's safety, security, or privacy." *Kush*, 683 N.W.2d at 846. The HRO statute "requires both objectively unreasonable conduct or intent on the part of the harasser and an objectively reasonable belief on the part of the person subject to harassing conduct." *Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006), *rev. denied* (Minn. Mar. 28, 2006).

Howe argues that, although he should not have entered the garage without permission, his conduct was not objectively unreasonable. He claims that his reasons for

5

entering the garage were justifiable—returning R.B.'s belongings and retrieving his car—and that the district court thus failed to consider the totality of the circumstances.

But the totality of the circumstances here supports the district court's determination. According to Brannon's testimony, which the district court credited, there was a significant history of unwanted contact by Howe that preceded the intrusions into Brannon's garage, including five instances where Brannon called the police to get Howe to leave. This history provides context to the district court's determination that Howe's intrusions into Brannon's secure garage area were objectively unreasonable.

Howe contends that R.B. was likely happy that he returned her belongings and that this should have been factored into the district court's analysis. But Brannon is the petitioner in this case, not her daughter, and the garage was part of Brannon's residence, not R.B.'s.

Howe also argues that the district court made erroneous findings of fact when it stated that there is a dispute about whether the car Howe retrieved was owned by him and that Howe engaged in "manipulation" to gain entry into Brannon's garage to retrieve the car. We disagree. As to the existence of a dispute, Brannon testified that she believed the car had been given to R.B. as a gift, while Howe maintained that it was owned by his business. This would seem to support the district court's characterization. But regardless, the issue is not material because the district court based its determination on the fact that, no matter who owned the car, "there is no dispute that it was [Brannon's] garage, and not [Howe's] garage and that Howe entered the garage without Brannon's knowledge or permission."

6

Howe's objection to the district court's finding that Howe had engaged in "manipulation" references the following excerpt from the district court's order: "While [Howe] did not break into [Brannon]'s private garage by physical force, he did so by manipulation, a manipulation that he justifies and continues to believe is acceptable." Howe argues that he did not engage in "manipulation" because he was merely seeking to retrieve his own car. But the fact remains, by Howe's own admission, that he did not have Brannon's permission to enter the garage and that he talked another resident into giving him access to the garage. This is the salient part of the district court's finding, which is supported by Howe's own testimony. We thus discern no clear error in the district court's finding.

Finally, Howe challenges the district court's determination that his conduct had a substantial adverse effect on Brannon and that her reaction was not objectively reasonable. Here again, we conclude that the determinations are supported by the record. Brannon testified that she felt unsafe, that his actions made her feel threatened and intimidated to the point that she sought therapy, changed her routines, and moved her residence to a location she is trying to keep secret from Howe. This testimony, combined with her testimony about the interactions she has had with Howe in the past, is more than adequate to support the district court's determination that his actions did have a substantial adverse effect on Brannon and, given the totality of the circumstances, that her reaction was objectively reasonable.

**Affirmed.**