*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0780**

Allison Marie Wolf,
Respondent,

vs.

John Roman Schmainda,
Appellant.

**Filed January 16, 2024
Reversed
Gaïtas, Judge**

Kandiyohi County District Court
File No. 34-CV-23-201

Allison Marie Wolf, Willmar, Minnesota (self-represented respondent)

Lori L. Athmann, Jovanovich, Dege & Athmann, PA, St. Cloud, Minnesota (for appellant)

Considered and decided by Gaïtas, Presiding Judge; Segal, Chief Judge; and Cleary, Judge.*

**NONPRECEDENTIAL OPINION**

**GAÏTAS**, Judge

Appellant John Roman Schmainda challenges the district court's grant, after an evidentiary hearing, of respondent Allison Marie Wolf's petition for a harassment restraining order (HRO). Schmainda argues that the district court abused its discretion by

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

issuing the HRO because the evidence did not establish reasonable grounds to believe that he had harassed Wolf and his conduct had or was intended to have a substantial adverse effect on Wolf's safety, security, or privacy. He also contends that the district court erred by addressing his parenting time in the HRO without considering the best interests of the parties' joint child. Because the record does not support the district court's finding that Schmainda engaged in harassment, we reverse.

**FACTS**

Wolf and Schmainda were involved in a 20-year intimate relationship that ended in March 2023. Although they never married, they share a 15-year-old child and own a home together.

In May 2023, Wolf petitioned for an ex parte HRO alleging that Schmainda was harassing her. The district court issued an ex parte HRO.

Schmainda requested an evidentiary hearing. The evidence presented at the hearing was as follows.

Wolf testified that, when the couple separated, she moved to a friend's home with their child. Following the separation, Wolf and Schmainda agreed to communicate solely in writing, using texts and emails. But according to Wolf, Schmainda sent her "constant text messages." And in those messages, he threatened to change the locks to their home and throw away her belongings. When the texts did not stop, Wolf blocked Schmainda on her phone. At that point, she testified, he began emailing her. She also heard from her friends that Schmainda had reestablished his social media accounts. According to Wolf,

2

she received a notification on her phone that Schmainda had "added" her to one social media account. She "automatically blocked" the social media accounts.

Wolf recounted an incident with Schmainda at their home when she went to pick up her belongings after moving out. She testified that Schmainda "threaten[ed] to bust [her] car windows out and [she] called his bluff and ended up in a situation where he was shutting the garage door, and [she] kind of got trapped under there." During the incident, she called the police. According to Wolf, Schmainda "was able to change the locks and open things back up right before the police got there."

In support of her HRO petition, Wolf introduced several exhibits. Two of those exhibits were photographs of text messages allegedly exchanged between Schmainda and the couple's child. In one such exhibit, the photograph showed a text from the child to Schmainda, stating, "I love you so much but I need you to own up to what you have been doing to mom. You need to stop manipulating us dad, please . . . ." The second such exhibit showed a message from Schmainda to the child, stating, "Mom is sick mentally and physical[ly] with genetic things that don't just go away unless she has been lying this whole time to you and I about what's really going [o]n with her." Wolf also introduced a photograph of her email inbox, which showed multiple unread emails from Schmainda but did not reveal the content of those emails. She acknowledged that she had no other physical evidence of harassing texts or emails.

Schmainda presented the testimony of the police officer who had responded to the incident at the house. The officer testified that Wolf was in the home collecting her belongings when he arrived. Thus, he observed no evidence to support Wolf's claim that

3

Schmainda had locked her out of the house. The officer testified that "tension[s] seemed high [and] [i]t seemed like some sort of verbal altercation had gone on." Wolf showed him a video that she made on her phone. She told the officer that the video showed how Schmainda had tried to "crush her legs" under the garage door. But according to the officer, the video did not show a moving garage door or anything concerning. In the officer's view, "the situation was more civil than criminal." The officer testified that, in his experience, in "situation[s] where tensions are high" it is generally safest if one party leaves the home; he advised Wolf of that fact but assured her that she was not required to leave the home.

Schmainda also testified at the hearing. He denied locking Wolf out of the house, explaining that he did not change the locks until after Wolf had completely moved out. Schmainda also denied harassing Wolf by text or email. He introduced exhibits that he claimed showed the entirety of his communications with Wolf. Those exhibits consisted of text messages and emails between Schmainda and Wolf—often initiated by Wolf—concerning the division of belongings, when Wolf would pick up her belongings, and parenting time. The messages that were allegedly from Schmainda did not contain any threats, disparaging remarks, or abusive language.

Following the hearing, the district court issued an HRO. It determined that Schmainda harassed Wolf and that the harassment had or was intended to have a substantial adverse effect on Wolf's safety, security, or privacy. The district court based this determination on the following factual findings: (1) Schmainda "sent harassing text messages and email[s] to [Wolf]," (2) Schmainda "changed the locks to the home to ensure [Wolf] was locked out," (3) "[l]aw enforcement was called to the home and advised the

4

parties to separate for safety reasons," and (4) Schmainda "harassed [Wolf] by sending their [child] a text message stating, 'Mom is sick mentally and physical[ly] with genetic things that don't just go away unless she has been lying this whole time to you and I about what's really going in with her'" to "undermine the mother-[child] relationship."

The HRO directs Schmainda not to not harass Wolf, to have no contact with Wolf, and to remain over 200 feet away from Wolf's residence and workplace. Additionally, the HRO states,

> The minor [child] of [Wolf] and [Schmainda] is 15 years old. [Schmainda] does not need to contact [Wolf] regarding parenting time with the child. Time between the child and [Schmainda] can be arranged directly through the child who can either agree or deny spending time with [Schmainda] at 15 years old.

Schmainda appeals.

## DECISION

Minnesota Statutes section 609.748 (2022) governs HROs, which provide a legal avenue for victims of harassment to petition the court for relief. Section 609.748 subdivision 1(a)(1), defines harassment, in relevant part, as "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another, regardless of the relationship between the actor and the intended target." To constitute harassment, a person's behavior must go "beyond an acceptable expression of outrage and civilized conduct." *Kush v. Mathison*, 683 N.W.2d 841, 846 (Minn. App. 2004), *rev. denied* (Minn. Sept. 29, 2004). Statements that are simply "inappropriate or argumentative" do not satisfy

5

this standard. *Id.* at 844; *see also Beach v. Jeschke*, 649 N.W.2d 502, 503 (Minn. App. 2002) ("We note that comments that are merely inappropriate and argumentative are insufficient to rise to the level of harassment.").

In order to issue an HRO, a district court must "find that there are reasonable, rather than merely subjective, grounds to believe that the accused engaged in harassment." *Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006), *rev. denied* (Minn. Mar. 28, 2006). A petitioner must prove both "objectively unreasonable conduct or intent on the part of the harasser" and "an objectively reasonable belief on the part of the person subject to harassing conduct." *Peterson v. Johnson*, 755 N.W.2d 758, 764 (Minn. App. 2008) (quotation omitted); *see also Kush*, 683 N.W.2d at 845 (stating that the intent of the harasser may be determined using a subjective standard). A district court may issue an HRO if it finds, based on the "testimony and documents properly admitted," *Harris on behalf of Banks v. Gellerman*, 954 N.W.2d 604, 610 (Minn. App. 2021) (quotation omitted), that there are "reasonable grounds to believe that the respondent has engaged in harassment," *Beach*, 649 N.W.2d at 503. *See* Minn. Stat. § 609.748, subd. 5(b)(3).

Appellate courts review a district court's decision to grant an HRO for an abuse of discretion. *Peterson*, 755 N.W.2d at 761. A district court abuses its discretion "if it makes findings of fact that are not supported by the record, misapplies the law, or resolves the matter in a manner that is contrary to logic and the facts on record." *Madden v. Madden*, 923 N.W.2d 688, 696 (Minn. App. 2019). "A district court's findings of fact will not be set aside unless clearly erroneous," and we give "due regard" to the district court's "opportunity to judge the credibility of witnesses." *Kush*, 683 N.W.2d at 843-44; *see also*

*Peterson*, 755 N.W.2d at 763 ("Credibility determinations are the province of the trier of fact."). However, we will reverse "the issuance of a restraining order if it is not supported by sufficient evidence." *Kush*, 683 N.W.2d at 844.

Schmainda argues that the district court abused its discretion in determining that his conduct constituted harassment. He challenges three of the district court's four grounds for this determination.

First, Schmainda challenges the district court's finding that he "sent harassing text messages and email[s] to [Wolf]." He contends that the evidence he presented at the hearing, including his exhibit that allegedly contains all of the text and email communications he exchanged with Wolf, disproved Wolf's claim of harassment.

Schmainda's argument asks us to weigh the evidence and to conclude that his evidence was more persuasive than Wolf's evidence. As a reviewing court, we do not weigh evidence. Rather, when there is conflicting evidence, we generally defer to a district court's findings because the district court is in the best position to make credibility determinations. *See Kush*, 683 N.W.2d at 843-44 (stating that witness credibility determinations are within the purview of the district court).

However, we do review a district court's factual findings for clear error. And based on our review of the record, we determine that the district court clearly erred in finding that Schmainda sent harassing texts and emails to Wolf. *Id.* At the hearing, Wolf's testimony regarding the allegedly harassing texts and emails was minimal. She testified, "We got— received constant text messages after we left for the weekend of the locks being changed things, threats with [the child], and that continued." She also testified, "[H]e emails me

7

constantly when I had turned off my phone because the text messages didn't stop. So then I shut my—blocked him on my phone. Then the emails wouldn't stop and then it's when I went for the HRO." Wolf introduced what she testified was a photograph of her email inbox showing some incoming emails from Schmainda. But Wolf presented no evidence regarding the content of the emails. Moreover, she did not rebut Schmainda's testimony that his exhibit included the content of all texts and emails that had been exchanged. We agree with Schmainda that those texts and emails show no objectively unreasonable conduct or intent on his part. *See Peterson*, 755 N.W.2d at 764 (requiring objectively unreasonable conduct for an HRO). Instead, they depict ongoing and appropriate— although terse—conversations about dividing property after Wolf moved out of the home. And although these electronic communications occurred with regularity, they were initiated by both Wolf and Schmainda. On the record before us, there is no evidence that Schmainda's texts and emails to Wolf were "repeated incidents of intrusive or unwanted acts, words, or gestures" that had "a substantial adverse effect" or were "intended to have a substantial adverse effect on" Wolf's "safety, security, or privacy." *See* Minn. Stat. § 609.748, subd. 1(a)(1). Thus, the district court's finding that Schmainda "sent harassing text messages and email[s] to [Wolf]" was clearly erroneous. *See Witchell v. Witchell*, 606 N.W.2d 730, 732 (Minn. App. 2000) (determining that district court clearly erred in finding that husband's comments in a visitation notebook, used to communicate about shared children, were "intrusive or that they were intended to adversely affect the safety, security, or privacy of wife").

Second, Schmainda challenges the district court's finding that he "changed the locks to the home to ensure [Wolf] was locked out." He argues that the district court clearly erred in finding that he locked Wolf out of the house. Alternatively, he contends that, even if he did change the locks, this act did not constitute harassment.

We discern no clear error in the district court's finding that Schmainda changed the locks. Because there is evidence in the record to support the district court's finding that Schmainda changed the locks, and we defer to the district court's credibility findings, the district court's factual finding is not clearly erroneous. *See Kush*, 683 N.W.2d at 843-44.

However, we agree with Schmainda's argument that, in the context presented by this record, the changing of these locks after Wolf moved out was not an act of harassment. It was not an "intrusive or unwanted act," and it was not an act intended to have "a substantial adverse effect" on Wolf's "safety, security, or privacy." *See* Minn. Stat. § 609.748, subd. 1(a)(1). There was no evidence that Wolf was permanently denied access to the home in which she no longer lived; she ultimately removed her belongings from that home. And once she retrieved her belongings, Wolf no longer sought access to the home. Given these circumstances—and particularly the fact that Wolf had moved out of the house—Schmainda's act of changing the locks after Wolf no longer lived there was not objectively unreasonable or "beyond an acceptable expression of outrage and civilized conduct." *Kush*, 683 N.W.2d at 846. Thus, the district court clearly erred in relying on this act to determine that Schmainda engaged in harassment.

Third, Schmainda challenges the district court's determination that he harassed Wolf because "[l]aw enforcement was called to the home and advised the parties to separate

9

for safety reasons." We agree that this act—law enforcement's response to the home— does not constitute harassment. The mere fact that law enforcement is called to a scene is not, without more, grounds for issuing an HRO.

Finally, Schmainda argues that the fourth ground for the HRO—the text that he sent to the child regarding Wolf's mental health—standing alone, is insufficient to support the HRO. Although Schmainda seems to concede that this text *was* objectively unreasonable, *see id.* at 844-45, he points out that harassment requires "*repeated* incidents of intrusive or unwanted acts, words, or gestures," *see* Minn. Stat. § 609.748, subd. 1(a)(1) (emphasis added). Schmainda is correct on this point. "One incident of an intrusive or unwanted act is insufficient to prove harassment if there is no infliction of bodily harm or attempt to inflict bodily harm." *Peterson*, 755 N.W.2d at 766. Because the hearing evidence established only one such act, the district court did not have reasonable grounds to believe that Schmainda engaged in harassment. Thus, the district court abused its discretion by granting Wolf's HRO petition. *See Roer v. Dunham*, 682 N.W.2d 179, 182 (Minn. App. 2004) ("Because the district court identified only one incident of harassment, the findings are insufficient to support the restraining order.").[1]

**Reversed.**

---

[1] Because we reverse the grant of the HRO, we do not reach Schmainda's challenge to the parenting-time provision in the HRO.